23   77
32   557

## No. 2257.

## EX PARTE D. A. KENNEDY.

1. CONSTITUTIONAL LAW.—THE LOCAL OPTION LAW is an enactment which comes within the scope of the police powers of this State and does not take, damage nor destroy private property for public use within the meaning of section 1 of the Bill of Rights, and does not infringe upon any other provision of constitutional law.   (See Ex parte Lynn, 19 Texas Ct. App., 293.)

2. SAME.—Article 3230 of the Revised Statutes, requiring the County Clerk to post copies of the order of election at least twenty days before an election under the local option law, controls Article 3229, which makes it the duty of the court to order the election to take place not less than fifteen nor more than thirty days after the issuance of the order.

3. SAME.—When a penal law prohibits two or more acts, one valid and constitutional and the other not, it may and will be held valid and constitutional, and can and will be enforced, as to that portion which is valid and constitutional.   See the opinion for a case to which the rule applies.

4. SAME.—It is not a valid objection to the legality of an election under the local option law that two of the five notices required by law to be posted in the county were posted in a sing'e precinct.

5. SAME.—The local option law of this State (Rev. Stat., arts. 3230, 3232), requires that the commissioners court of the county "shall appoint and qualify the proper officers in accordance with the election law," and that "the officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections."   Articles 1681 and 1682 of the Revised Statutes prescribe the duties of officers under the general election law.

6. SAME.—Failure on the part of the proper officers to perform duties required of them in furtherance of an election will, if the election be a special one, render it nugatory and void, if thereby electors sufficient to have changed the result were deprived of the right to vote at said election.   See the opinion *in extenso* upon the question, and for a case to which the rule applies.

APPEAL from the County Court of Hunt. Tried below before the Hon. J. S. Sherrell, county judge.

The appellant in this case was held under a capias charging him with the violation of the local option law. He sought his discharge under a writ of habeas corpus sued out and heard before the county judge, who refused to discharge him, and he appeals to this court from that order.

*E. W. Terhune,* for the appellant.

*J. H. Burts,* Assistant Attorney General, and *M. N. Brooks,* for the State.

WHITE, PRESIDING JUDGE. In Ex parte Lynn, 19 Texas Court of Appeals, 293, whilst it was admitted that strong reasoning might be adduced in favor of the proposition that the local option law was unconstitutional, yet it was said "there is a strong and almost uniform array of authorities which unequivocally declare that laws such as our local option law are within the scope of the police powers of a State, and do not take, damage or destroy private property for public use, within the meaning of that provision of the organic law (sec 1. Bill of Rights), and do not infringe upon any other provision of constitutional law."

It is insisted that the local option law is inoperative. on account of irreconcilable inconsistency in two of its provisions, to wit: Article 3229, Revised Statutes, makes it the duty of the court to order the election to take place not less than fifteen nor more than thirty days after the order; whilst Article 3230 requires the clerk to post a copy of this order at least twenty days before the election. We apprehend that the last article will control the apparent inconsistency, and that no election would be attempted to be held unless the orders had been posted twenty days before hand. Again, it is insisted that there is no penalty prescribed for the violation of local option which can be enforced. It is true our code denounces the penalty against any person selling intoxicating liquors, after the votes have determined that *"the sale or exchange"* shall be prohibited (Penal Code, art. 378), and it is also true that an election can only be held to prohibit the *"sale"* (Rev. Stat., art. 3227), and that if the election were ordered to prohibit *"the sale and exchange"* or the *"exchange,"* it would be void. (Steele's Case, 19 Texas Ct. App.,

428.) Yet, when a penal law prohibits two or more acts (*e. g.*, a sale and an exchange), the one valid and constitutional and the other not, it may and will be held valid and constitutional, and can and will be enforced, as to that portion which is valid and constitutional. (Holly v. The State, 14 Texas Ct. App., 506.)

It is also claimed that the election was invalid because, of the five notices required by law to be posted, two were posted in one precinct of the county, and one of those at a "gin," which was not a public place. It would unquestionably be a better practice, where the election is for an entire county, to have the posting of the notices distributed in different precincts, and in a manner so as to afford the greatest publicity possible. But there is no statute regulating the matter; all that is required is that "the clerk shall post or cause to be posted at least five copies of said order at different public places in each county." (Rev. Stat., art. 3230.) So the places are public and different is all that is necessary. In this case "the gin" objected to is shown to have been "a public place."

A most serious objection is urged to the validity of the election, from the fact that no election whatever was held, nor was an opportunity afforded the electors to vote, in one precinct of the county at said election. There were twenty-four election precincts in Hunt county. One of these precincts, number 6, was called "Durham's." It was eighteen miles from town, and at the November general election, 1886, a little over a month prior to the local option election, there were one hundred and twenty-nine votes cast for that precinct at said box. Preparatory to the local option election it is shown by the statement of facts that no notice of the election of any kind was posted in justice's precinct number 6, the one in which Durham's voting place is situated; and no writ of election, or copies of form of returns, or any authority to hold the election of any kind was ever delivered to the presiding officer of said voting place; and no such writ or authority or forms were delivered to any voter residing nearest said election precinct or voting place. Now it is expressly provided by the local option law that the commissioners court of the county "shall appoint and qualify the proper officers in accordance with the election law;" and that "the officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections." (Rev. Stat., arts. 3230, 3232.) Such election must be held in conformity with

the general election laws except where it is otherwise provided in the local option laws.

Under the general election laws it is provided that "the county judge or county commissioners ordering an election shall issue writs of election, wherein shall be particularly stated * * * * the question to be voted upon and the day of election; and a copy of the form of election returns furnished by the Secretary of State shall accompany each writ." (Rev. Stat., art. 1681.)

"Art. 1682. The writs of election and copies of the forms of returns, as provided for in the preceding article, shall be delivered to the sheriff, who shall, previous to the day of the election, deliver the same to the presiding officer of each election precinct in which the election is ordered to be held; and in case there be no presiding officer in any such election precinct, the writ and form shall be delivered to the qualified voter of such election precinct who resides at or nearest to the voting place in such precinct." No writ for the election was ever delivered by the sheriff in accordance with this provision of the law, and, as stated above, no election was held at said voting place in precinct number 6 on December 11, 1886, when local option was voted upon in Hunt county. The returns of the election showed that local option was carried in the other precincts of the county by a majority of one hundred and twelve votes. As stated, at the previous November general election, Durham's box, or precinct number 6, cast one hundred and twenty-nine votes. Had there been an election held on local option at that box, and all these votes had been cast "against prohibition," then local option would have been defeated in the county.

Now, what is the law? Mr. Cooley says where time and place for an election are fixed or prescribed by law, every voter must take notice of the law and deposit his ballot at the time and place appointed, notwithstanding the officer whose duty it is to give notice of the election has failed in that duty. * * * * But this would not be the case if either the time or place were not fixed by law, so that notice becomes essential for that purpose." (Cooley on Const. Lim., 4 ed., p. 759.)

In his work on elections, McCrary says: "It is doubtless perfectly true that where the election has been held at the proper time and the proper place, and the electors have had notice and participated in it, the want of such notice as the law provides will not render it void. But if it appears that due notice has

not been given, and that a portion of the electors have been thereby deprived of the right to vote, and particularly if the number thus deprived is sufficient to have changed the result if they had voted on one side or the other, in such case the election is clearly void." (Sec. 117.)    In McKune v. Weller, 11 California, 49, it is held that an important distinction is to be observed between general and special elections.    The time, place and manner of holding the former being fixed by law, the electors may, and indeed must, take notice of them; but this is not the case with special elections, in which all the prerequisites of the law must be complied with. (Id., sec. 1211. See also State v. Young, 4 Iowa, 561; Barry v. Lauck, 5 Cold., Tenn., 588; Secord v. Foutch, 48 Mich., 89.)

Mr. Cooley says: "That one entitled to vote shall not be deprived of the privilege, by the action of the authorities, is a fundamental principle.    *    *    *    *    And, although the failure of one election precinct to hold an election or to make a return of the votes cast, might not render the whole election a nullity, where the electors of that precinct were at liberty to vote had they so chosen, or where, having voted but failed to make return, it is not made to appear that the votes not returned would have changed the result; yet, if any action was required of the public authorities preliminary to the election, and that which was taken was not such as to give all the electors the opportunity to participate, and no mode was open to the electors by which the officers might be compelled to act, it would seem that such neglect, constituting, as it would, the disfranchisement of the excluded electors *pro hac vice*, must, on general principles, render the whole election nugatory; for that can not be called an election, or the expression of the popular sentiment, where a part only of the electors have been allowed to be heard, and the others, without being guilty of fraud or negligence, have been excluded." (Cooley's Const. Lim., 4 ed., pp. 776, 777.)

It will thus be seen that, though the five notices required by the local option law may be held sufficient as notice of said election, yet the failure to do anything else, or to comply with any other requisite of the law that may be essential in furtherance of such election according to the laws, will, if the election be a special one, render it nugatory and void, if, thereby, electors sufficient to have changed the result were deprived of the right to vote at said election.    When a special or local election is to be held, then all the requirements of the law must be sub-

6 — TEX. APP. XXIII.

stantially at least, if not literally, complied with. If officers, whose duty it is to send out or deliver election writs, can decline and refuse to do so as to one precinct, they could as well do so as to all but one, which they might know would vote their own sentiments and thereby deprive an honest majority of the right to vote upon a matter of gravest moment to their interests.

It is unnecessary to discuss other questions so ably argued and briefed by counsel on both sides. We are of opinion, on the facts exhibited in this record, that the election for local option in Hunt county on the eleventh of December, 1886, is, for the reasons we have given above, an absolute nullity; wherefore, the judgment in this case, rendered by the court below, is reversed and the prosecution dismissed.

*Reversed and dismissed.*