DIANA RICHARDSON v. GEORGE PRENTISS.

*Riparian rights—Interference by erections in the water.*

The owner of land on a bay shore platted a parcel reserving a strip two rods wide lying between the lots nearest the water and the water-line. She afterwards granted from this parcel a lot which extended back to the boundary of the reserved tract, and described as lot 5. Still later she conveyed to the same purchaser a parcel of land in the rear of this lot and described as "so much of a reserved strip of land on Thunder Bay shore as lies in the rear and adjoining lot number five * * to extend no farther into the bay than six rods from the rear line of said lot * * *reserving* * * *a strip of land two rods wide across said six rods here conveyed,* until second parties shall construct a passage way beyond and adjoining said six rods hereby conveyed, two rods wide, and keep it open for the free passage of teams, for the use and benefit of first and second parties at all times." Some years later the grantor made another plat covering the land reserved in the first plat, and laid out lots extending into the waters of the bay, with a street beyond them, and beyond the street she platted a lot designated as lot 1, which lay wholly under water and extended across the water front of all the other lots including the descriptions conveyed. She then sold lot 1 to another person who made permanent and valuable improvements upon it, part of which extended in front of the first grantee's property in the shallow waters of the bay. *Held*, on a bill filed by the first grantee against the second, for the protection of the former's riparian rights, that notwithstanding the reservation of a strip of land across the premises in the second conveyance, the grantee therein acquired full riparian rights and was entitled to be protected in their enjoyment.

Appeal from Alpena. Submitted Jan. 13. Decided April 12.

INJUNCTION. Bill dismissed. Complainant appeals. Reversed.

*J. B. Clayberg* and *C. A. Kent* for complainant.

*J. D. Turnbull* and *C. I. Walker* for defendant.

MARSTON, J. The complainant asks equitable relief in the protection of certain riparian rights, which she claims the defendant is encroaching upon.

Samantha Hitchcock, as the owner of certain premises running to Thunder bay, platted a portion thereof in 1866. According to this plat a strip of land two rods wide, lying between the lots nearest the waters of the bay and the water line, was reserved.

On the 27th of September, 1866, she conveyed to complainant lot five in block two on this plat, and this lot extended to the above-mentioned reserve line.

Afterwards and in August, 1872, Mrs. Hitchcock conveyed to complainant land in the rear, or towards the water, of lot five, described as "so much of a reserved strip of land on Thunder bay shore as lies in the rear and adjoining lot number five in block number two in Hitchcock's first addition to the village, now city of Alpena, to extend no further into the bay than six rods from the rear line of said lot number five, reserving to ourselves a strip of land two rods wide, across said six rods hereby conveyed, until second parties shall construct a passage-way beyond and adjoining said six rods hereby conveyed, two rods wide, and keep it open for the free passage of teams, for the use and benefit of first and second parties at all times."

In March, 1879, Samantha Hitchcock made a second plat of property which included this piece of land which was reserved on the first plat, and also laid out lots running into the waters of the bay, with a street beyond, out and in the waters of the bay, and beyond this street, lot one, which was wholly in the bay, was designated and extended across the water front of all the lots including the descriptions sold the complainant.

After this platting, but the same month, Mrs. Hitchcock conveyed this water lot one, and other lots, to the defendant, who has made improvements thereon, permanent in their character and very valuable, a part of which extends out in front of complainant's property in the shallow waters of the bay.

The questions raised are as to the rights of the respective parties under their conveyances.

Under the conveyance to complainant of lot five, she acquired no riparian rights whatever. This lot was con-

veyed according to a plat which reserved a strip of land between the lot and the waters of the bay, and a strip two rods wide would as effectually cut off from lot five all riparian rights as would a much wider strip.

The second conveyance to complainant gives her this reserved strip with all the rights of a riparian proprietor pertaining thereto, unless such rights are restricted, owing to the peculiar language of the deed of conveyance. What does this deed purport to convey?

*First.* It grants so much of a reserved strip of land on Thunder bay shore as lies in the rear and adjoining lot number five in block number two in Hitchcock's first addition to the village (now city) of Alpena.

*Secondly.* This strip so conveyed, "to extend no further into the bay than six rods from the rear line of said lot number five."

*Thirdly.* It reserves "to ourselves a strip of land two rods wide across said six rods here conveyed."

*Fourthly.* And this reservation is to continue, "until second parties shall construct a passage-way beyond and adjoining said six rods here conveyed, two rods wide, and keep it open for the passing of teams, for the use and benefit of first and second parties at all times."

The third and fourth clauses, referring to the reservation of a two-rod strip, and the time it is to continue, even if the reservation could be enforced, neither extend nor restrict the operation of the grant, or the extent of complainant's rights as riparian proprietor thereunder. The fourth clause does recognize the right of complainant to construct in the bay, beyond the six-rod boundary line, a private way, for the use of both parties. Going back then to the first and second clauses, they grant and convey to the complainant a reserved strip of land in the rear of and adjoining lot five, extending six rods and no farther into the bay from the rear of this lot.

The general rule is that where lands are conveyed, bounded by a water-course, the grantee holds to the thread of the river, even although such was not the grantor's intention;

and a reservation of a right of way, in a grant of land so bounded, upon the bank of the stream, will not limit the grantee's riparian rights. Angell on Water Courses, § 17. " The cases, on the whole, may be said to demonstrate the existence of the rule, that a grantee bounded on a river, (and it is almost immaterial by what mode of expression,) goes *ad medium filum aquæ*, unless there be decided language showing a *manifest intent* to stop at the water's edge; and there seems a distinct and strong tendency in the cases to turn every doubt upon expressions which fix the boundary next the river, in favor of a contact with the water." Angell, § 23. And again the same learned author says: "It thus appears to be well established that the *bank* and the *water* are correlative, and that one cannot be owned without touching the other; that the *bank* is the principal object; so that when the law once fixes the proprietorship of *that*, the soil of the river follows as an incident; or rather, (as it has been said,) 'as part of the subject-matter, *usque ad filum aquæ*.'" id. § 26. And when a grant of land refers to a map, upon which the land is laid down as bounded on a water-course, the grantee is entitled to hold to the center. id. § 32.

Equally clear has been the language of the decisions in this State. Thus in *Watson v. Peters* 26 Mich. 517, Mr. Justice Cooley, in delivering the opinion of the court, said: "The owner of city lots bounded on navigable streams, like the owner of any other lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose, but when he conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of navigable water. Such privileges and conveniences constitute a part, and in many cases the principal part, of the value of the grant; and it is precisely in these cases of city lots that they are of most value, and generally constitute the chief inducement to the

purchase; and the chief, or at least a very important element, in determining the price. These cases, therefore, of all others, are those in which the reason of the rule which infers an intent to convey the land under the water, is most apparent and forcible. And the rule itself is too valuable, and too important, to be varied by so immaterial a circumstance as that the boundary on the water is defined by a line, instead of by making use of words which to the common understanding would convey the same meaning. And what we have said of navigable waters, is equally applicable to all natural water-courses." This was a case where the defendant was in possession, claiming title, and by the plat the westerly line of the blocks on the plat was drawn along the shore line of the river. And it was said that this did not distinctly indicate an intent on the part of the proprietor to make the case exceptional or to reserve to themselves any rights in front of the water lots marked on it.

In *Bay City Gas-light Co. v. Industrial Works* 28 Mich. 183, Mr. Justice Campbell declared it to be the settled law of this State, "that any use of lands under rivers, which is compatible with the full enjoyment of the public easement, belongs with the upland to which it was originally appurtenant, unless sold or granted separately so as to sever it."

In this State, whatever the law may be elsewhere, these same principles have been applied to lands fronting upon the lakes. *Rice v. Ruddiman* 10 Mich. 139; *Pere Marquette Boom Co. v. Adams* 44 Mich. 404.

In this case the uplands conveyed by the second deed to complainant, certainly included all the upland to the water's edge, and there was added thereto the clause, that the land so conveyed should extend no farther into the bay,—that is, the land under the water therof,—than six rods from the rear line of the lot five. The case therefore is stronger, if that were possible, than any of the above referred to, for while they were bounded by the water's edge, here the boundary is some four rods from the shore, out in the waters of the bay. It not only conveys the entire bank, but a part of the lands under the water, if that could add to the grantee's

rights. The question is not one of power in Mrs. Hitchcock while she owned the bank or upland, to have separated the water privileges therefrom by a sale thereof, upon which we at present express no opinion, but rather whether in selling the upland, under this second conveyance, notwithstanding the peculiar language thereof, all riparian rights did not pass to the grantee named therein. Had Mrs. Hitchcock before making this second conveyance platted this reserve as she did by her second plat and sold lot one, as she afterwards did, to the defendant, then the question would have arisen as to her power to thus separate the riparian right from the upland, a question which in my opinion does not arise in the present case.

The language in the deed, which has given rise to this controversy, is in my opinion no stronger than though the land sought to be conveyed had been described by metes and bounds, running out six rods from the rear of lot five. The conveyance purports to be one of lands ; it is so much of a reserved strip as lies in the rear of lot five, but extending no farther into the bay than six rods. The rights appurtenant to this land are not reserved, nor restricted in any way, and as the land conveyed extends out and into the waters of the bay, all riparian rights pertaining thereto pass with it as part of the subject matter. There cannot be found in the deed that clear, decided language of a manifest attempt to limit the grant which the law requires in order to vary a rule so firmly established, under which riparian rights follow a conveyance of the upland bank, or shore.

Without, therefore, attempting to pass upon any of the other questions discussed by counsel, I am of opinion that the complainant has established her right as riparian proprietor, and that she is entitled to protection in the enjoyment thereof.

The decree of the court below, dismissing the bill, will be reversed, and a decree entered in favor of complainant in accordance herewith. Complainant will recover costs of both courts.

The other Justices concurred.