*In re* McKENNA'S ESTATE.

McKENNA *v.* McKENNA.

1. SALES—AUCTIONS—TAXICABS.

Auction sale of 4 taxicabs which had been owned by defendant's decedent, a member of a nonprofit corporation, was not held in 2 parts where purchaser paid a lump sum for the vehicle and its accessories and the right to operate it, a right for which personal representative had to apply to mayor for transfer of city license (Detroit Compiled Ordinances 1945, ch 103, § 4).

2. EXECUTORS AND ADMINISTRATORS—FIDUCIARY'S DUTY TOWARD ESTATE PROPERTY.

A personal representative of an estate is a fiduciary and owes a duty to the estate not to engage in transactions concerning the property of the deceased for his or her own personal profit as against the interests of the estate.

3. SAME—ACCOUNTING—SALES OF TAXICABS AND RIGHT OF OPERATION.

The entire proceeds resulting from the sales of 4 taxicabs which had been owned by defendant's decedent, a member of a nonprofit corporation whose membership terminated upon his death, including the amount the purchasers paid to obtain the right to operate the taxicabs under the city license under which they had been operated, and not merely the

---

REFERENCES FOR POINTS IN HEADNOTES
[2] 21 Am Jur, Executors and Administrators § 251.

value of the vehicles and their accessories, under the circumstances, belonged to the estate of the deceased, hence special administratrix must account for entire sum received.

4. CORPORATIONS—NONPROFIT CORPORATION—MEMBERSHIP—TAXICABS —RIGHT TO OPERATE.

Entire sum paid by 4 members of nonprofit corporation for purchase of 4 taxicabs which had belonged to deceased member, together with transfer of license to operate them, was not for purchase of membership, where auction sale had been limited to members already owning 3 taxicabs and by-laws barred one person from having more than 1 membership.

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 17, 1952. (Docket No. 33, Calendar No. 45,415.) Decided September 3, 1952. Rehearing denied October 15, 1952.

In the matter of the estate of William P. McKenna, deceased. Edna J. McKenna filed her account as special administratrix. Andrew M. McKenna, executor of the will of Emily McKenna, deceased, objected thereto. Account allowed both in probate court and circuit court on appeal. Andrew M. McKenna, executor, appeals. Reversed and remanded with instructions.

*Moll, Desenberg, Purdy & Glover,* for appellant executor.

*Edward N. Barnard,* for special administratrix.

BOYLES, J. The question here for decision is whether $26,597 now held by Edna J. McKenna belongs·to her, or to the estate of her deceased husband, William P. McKenna, wherein she is special administratrix.

William P. McKenna died intestate in 1946, leaving as his surviving heirs-at-law Edna J. McKenna,

his widow, and Emily McKenna, his mother. At the time of his death he owned 4 taxicabs, together with licenses to operate them in Detroit. His widow, Edna J. McKenna, as special administratrix of his estate, petitioned the probate court "that an order be entered authorizing her as special administratrix to sell the said taxicabs for the best price obtainable and not less than the market value thereof." The probate court entered an order accordingly.

At the time of his death, William P. McKenna was a member of the Checker Cab Company, a Michigan nonprofit corporation. Under its rules and bylaws, his membership rights were terminated by his death. His 4 taxicabs were licensed to operate as such, in Detroit, under an ordinance of said city, which provided in part as follows:

"No license shall be granted until the person applying for such license shall have secured from the mayor a certificate certifying that public convenience and necessity require the operation of the taxicab or motor vehicle for hire. * *. * Licenses issued hereunder shall not be transferable excepting, however, in the case of death of any person owning a vehicle licensed hereunder, the mayor shall upon receipt of satisfactory evidence of such death, at the request of deceased's personal representative, approve transfer and validate by appropriate indorsement thereon such license in the hands of the person in whose name title to such taxicab shall become vested through the deceased's personal representative."

A so-called "bond plate" accompanied each taxicab. The city "license" referred to is the "bond plate." The secretary-treasurer of the Checker Cab Company testified:

"The license they are talking about * * * is the bond plate, we call it a bond plate, I presume a taxi license would be more correct."

Edna J. McKenna, as special administratrix and the personal representative of the deceased owner, proceeded to sell said taxicabs at an auction sale held at the office of the Checker Cab Company in Detroit. She asserts that they could be sold at best advantage and at an increase in price only if sold to members of Checker Cab Company. The secretary-treasurer testified to the circumstances and conditions under which the auction sale was held, as follows:

"I am a member of Checker Cab Company and was secretary-treasurer at the time of the death of William P. McKenna.

"On September 6, 1946, in my capacity as secretary-treasurer of Checker Cab Company, I had something to do with the sale of the 4 taxicabs that he owned at the time of his death.

"After his death, I contacted his widow and asked her if she wanted the directors of the cab company to manage the sale of the cabs, or did she want to shop around and sell them elsewhere. She informed me that since her husband had been a member for 20 or 25 years, she would prefer to have them sold in Checker Cab Company. We arranged for the sale, which took place on October 2, 1946. The eligible buyers were notified of the sale. A man who owned 4 cars could not purchase another car, but only members who only owned 3 cars. At that time no one owned less than 3. The only persons receiving notice of the sale were the so-called 'eligible' members, who owned 3 taxicabs. There was no public notice of the sale given to people outside the Checker Cab Company, by publication or otherwise. There were no outsiders present at the sale, which was held at the Checker Cab building.

"The prices arrived at for the bare motor vehicles were by figures from the so-called blue book, which is the National Automobile Dealers Association book, in which all used-car dealers and new-car dealers determine the value month by month of any kind

of car. The price in Mrs. McKenna's report is $1,034 for the bare vehicle and would be the blue book price. We arrived at the $250 for the special taxicab equipment in consultation with the widow as to what the meter, the partition, the Checker light, the spotlight and any other accessories that might be in the car would be worth. The cars were there at the sale and a prospective purchaser could see them, and at the sale he was told what we thought they were worth. The $50 bond plate fee was the city fee for the issuance of the plate."

The assembled eligible purchasers, company members who were already operating 3 licensed taxicabs, were the only bidders. They were willing to bid more than the mere used-car value of the taxicabs and equipment provided they also obtained the right to operate a taxicab in the city as evidenced by the bond plates issued to William P. McKenna by the city. The bond plates would be the purchasers' licenses to operate taxicabs in the city, and their transfers were controlled by the more important circumstance that under the taxicab ordinance the city would transfer the taxicab licenses of the deceased owner of the taxicabs, upon his death, only by the request of the personal representative of the deceased. It requires no particular foresight to see that Edna J. McKenna, in collaboration with the company, was in a position to decide whether a purchaser of the vehicle from the estate would get with it the privilege of using it as a taxicab in Detroit. It is apparent that what a prospective purchaser was bidding for was not merely a used taxicab and the equipment, including the "bond plate," but was actually bidding for the opportunity to have Edna J. McKenna, as special administratrix of the estate of the deceased owner, apply for the transfer of the city license and the right to operate a taxicab in Detroit.

The appellee claims that the auction sale of each taxicab was divided into 2 parts—1 for the sale of the vehicle, special equipment and "bond plate," and the other to enroll the purchased taxicab in the Checker Cab Company. The record fails to establish the fact. The only bidder who was sworn at the trial, who was 1 of the 4 successful bidders, testified:

"I didn't bid separately for the right to operate the cabs and for the cabs themselves, but I 'just bid.' My bid was $8,000."

Furthermore, a receipt given to this purchaser, to the same purport as those given each of the other 3 successful bidders, was:

"$8,000                                    Date 10–4–1946
"Received of J. Kern 8,000 dollars.  Payment of 1946 Ply & right to oper 4th car Ob."

Each of the successful bids was for a lump sum, covering the vehicle and accessories, and the right to operate a taxicab, namely, an opportunity to obtain a transfer of the license (the "bond plate"), which was obtainable from the mayor of the city only through an application by Edna J. McKenna, the personal representative of the deceased owner, as special administratrix of his estate. Edna J. McKenna, as special administratrix, might have sold the decedent's 4 taxicabs without resort to the Checker Cab Company, and under the ordinance the licenses held by William P. McKenna at his death might have been transferred to any other purchasers of his taxicabs, depending solely on the application of the special administratrix to the mayor asking for such transfer. The record does not indicate that any effort was made by Edna J. McKenna, as special administratrix, to sell the 4 taxicabs to any-

one else, or to learn whether a greater advantage might result to the estate by such sales.

Under these circumstances, the 4 taxicabs of the deceased were sold at auction to 4 eligible members of the Checker Cab Company, for the following amounts respectively:  $8,000—$7,875—$6,975 and $8,800, a total of $31,650. Each purchaser gave the money to the Checker Cab Company and each was given a receipt by the company in identical language except as to name of purchaser, make of car and amount of bid, each receipt concluding with "right to oper 4th car."

On the same date as the sale, Edna J. McKenna executed 4 separate letters addressed to the mayor of Detroit, identical except as to names of purchasers and numbers of taxi plate, as follows:

"Honorable Sir:

"This is to certify that I, Edna J. McKenna, am the personal representative of the late William P. McKenna, deceased, formerly a member of Checker Cab Company, and I have been duly appointed special administratrix of his estate. Further that by order of the probate court entered on the 16th day of September 1946, I was authorized and directed to sell the taxicab owned by the said deceased, and I have sold to [name of purchaser] the taxicab for which 1 set of city of Detroit taxi plates for the year 1946, bearing number  *  *  *  were issued to the said William P. McKenna, and I hereby respectfully request that the said set of taxicab plates No *  *  *  be transferred to the said [purchaser] in accordance with Detroit Compiled Ordinances, 1945, ch 103, § 4.

"In witness whereof, I have hereunto set my hand and seal this 2d day of October, A.D., 1946.

"Edna J. McKenna,<br>"Special administratrix."

It is rather significant that each of said 4 applications for such transfers was executed by her,

addressed to the mayor of the city, on October 2, 1946, the same day as the sales.

About 3 weeks later the Checker Cab Company gave 2 checks to Edna J. McKenna, payable to her own personal order, which were cashed by her personal indorsement. They were:

> "Detroit, Mich., Oct. 23, 1946
> "Pay to the order of Mrs. Edna McKenna . . . . . .
> $26,597.00
> The sum of . . . . 26,597 Dols 00 Cts . . . . . . . . Dollars
> For
> "CHECKER CAB COMPANY
> "DUDLEY D. GRAYSON,
> "SEC'Y.-TREAS."

> "Detroit, Mich., Oct. 23, 1946
> "Pay to the order of Mrs. Edna McKenna . . . . . .
> $5,053.00
> The sum of . . . . . . 5,053 Dols 00 Cts . . . . . . Dollars
> for account Wm. McKenna (Deceased).
> "CHECKER CAB COMPANY
> "DUDLEY D. GRAYSON,
> "SEC'Y.-TREAS."

On April 26, 1949, Edna J. McKenna, as special administratrix, filed in the probate court a report of the sale of said taxicabs, to

"4 different members of the Checker Cab Company who had qualified and who were recognized by the board of directors of the Checker Cab Company as permitted to purchase said Checker taxicabs and to operate them as Checker taxicabs in addition to the cabs that they were then operating. That she sold the said taxicabs at the price which was determined upon by the directors and officials of the Checker Cab Company as the price at which they should be purchased as used taxicabs and as used automobiles equipped with the special equipment for use as Checker taxicabs, * * * That she received therefor the full sum of $5,053 for the sale of the said personal property."

The report further stated that this was the total of the sums received for "the bare motor vehicle, * * * $250 for the special taxicab equipment therein, and for the sum of $50 for the bond plates." On the same date that she filed the foregoing report of sale, she also filed her final account as special administratrix, showing that the said sum of $5,053 had been turned over by her as special administratrix to herself later appointed as general administratrix of the estate of the deceased. In the meantime, Emily McKenna, the mother of the deceased William P. McKenna and an heir-at-law interested in his estate, had died and the appellant herein, Andrew M. McKenna, had been appointed as executor of her estate. He filed objections to the allowance of the final account of Edna J. McKenna as special administratrix, claiming that she had failed to account for the $26,597 she had received from the sale of the 4 taxicabs owned by William P. McKenna in addition to the $5,053 accounted for. The probate judge who heard the matter disagreed with that claim and allowed the account as filed by the special administratrix. On appeal, the circuit judge likewise overruled and denied appellant's claim and affirmed the order of the probate court. Andrew M. McKenna, as executor of the estate of Emily McKenna, deceased, appeals.

Stripped of nonessentials, the simple question here is whether the $26,597 which Edna J. McKenna, special administratrix, received personally from the Checker Cab Company resulting from the sale of the 4 taxicabs owned by William P. McKenna, belongs to her individually, or must she account for it to the estate. The Checker Cab Company is not a party in the case, it has paid over the money to her, and apparently has no financial interest in the outcome of this particular case. The appellee, Edna J. McKenna, claims that said money was received

by the Checker Cab Company for the right to operate 4th taxicabs by 4 of its members, and only inferen-. tially to obtain a transfer of the taxicab license from the city therefor; and that the Checker Cab Company made a present of said $26,597 to her. She was not a member of the Checker Cab Company and could not be. The only ground on which she seems to claim this money is that it was a gift to her from the Checker Cab Company. She had no individual interest in the taxicabs of William P. McKenna, or in his rights as a member of said company. She obtained the $26,597 as a result of the auction sale of the taxicabs owned by William P. McKenna, over and above the bare value of used taxicabs plus $250 in equipment, obviously on account of the opportunity allowed only to her by the ordinance to obtain a transfer of the decedent's 4 licenses to the purchasers, to operate 4 taxicabs in Detroit. Those transfers, according to the ordinance, could be obtained only by request of Edna J. McKenna as the personal representative of the deceased owner, and then only to the persons who became the purchasers of the titles of the taxicabs, when sold to them by her as such personal representative. Incidentally, Edna J. McKenna, as the personal representative of the estate of William P. McKenna, deceased, owed a duty to the estate not to engage in transactions concerning the property of the deceased for her own personal profit as against the interests of the estate. As special administratrix, she stood in the relationship of a fiduciary with the estate,* and as such was in a position of confidence and trust with respect to the estate and to Emily McKenna who was also an heir-at-law of the deceased.†

---

* CL 1948, § 704.1 (Stat Ann 1943 Rev § 27.3178[251]).
† CL 1948, § 704.2 (Stat Ann 1943 Rev § 27.3178[252]).

The right to operate a taxicab in Detroit under license is tied into the ownership of the vehicle itself by the provisions of the ordinance, which allows a transfer of the right to operate the taxicab upon the death of the owner only to one who purchases the taxicab from his estate, and then only on the application of the personal representative of the decedent. The licenses to operate the 4 taxicabs owned by William P. McKenna belonged to him. Appellee's brief concedes that:

"A license upon issuance by the city does not attach to a particular vehicle, but is issued to a licensee—a person."

Under the peculiar circumstances of this case, the entire proceeds resulting from the sale of the taxicabs, including the money paid by the purchasers in order to obtain the right to operate the taxicabs under city license, belong to his estate. Edna J. McKenna has no right to any part of the same. The contest in this case is not between the estate and the Checker Cab Company; it is between Edna J. McKenna, as special administratrix, and the estate of William P. McKenna, deceased. The decision here rests upon the respective rights of those parties.

Appellee claims that the Checker Cab Company was paid $26,597 for the privilege granted to the 4 purchasers each to operate a 4th taxicab. We do not so consider it. The purchasers paid that total sum in order to obtain the application of the special administratrix of the estate, the only person who could make such application to the mayor of the city, and thus to effectuate the transfer of the licenses from the estate to them. Nor was it paid to the Checker Cab Company by the purchasers for the privilege of becoming a member of the company under article 11 of its bylaws, as claimed by appellee.

The purchasers were not buying memberships—they were already members of the company. Under its bylaws, article 8(b), no person can be entitled to more than 1 membership.

As between Edna J. McKenna, special administratrix of the estate of William P. McKenna, deceased, and the estate she represented in the sale of these taxicabs, she is required to account to the estate for the full amount paid by the purchasers for the 4 taxicabs, including the sums paid by them to accomplish the transfers by her of the taxicab licenses held by the deceased. The case will be remanded to the circuit court for entry of an order to that effect and return to the probate court for entry of an order for allowance of the final account of the special administratrix in accordance therewith. Costs to appellant.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.

The late Chief Justice NORTH took no part in this decision.