In re SELLE ESTATE

Docket No. 43491. Submitted January 15, 1980, at Detroit.—Decided February 26, 1980.

Max Selle and Mary V. Selle entered into an antenuptial agreement which provided that their separate property before marriage would remain separate and property acquired during marriage would take on all legal attributes of jointly owned property. The parties jointly purchased a vendee's interest in a lot. Thereafter Max Selle entered into an agreement to construct a house on the lot. Loans for construction were secured by funds in his personal savings accounts rather than by encumbrances on the real property. Then Max Selle died and Mary was appointed special administratrix of his estate. Mary's petition to payoff the loans with money from the decedent's personal savings accounts was granted by the probate court. The petition made no mention of the use of the loan proceeds to finance construction of the house or that the property was for sale. Thereafter she sold the property, paid the builder, paid the closing expenses and retained the proceeds. Mary filed a first and final account which listed the loan repayment as an expenditure. A legatee, Hilda Garvin, objected to Mary's account. A hearing was held and the probate court disallowed the loan repayment expenditure and directed Mary to reimburse the estate. The court concluded that she was guilty of self-dealing. Oakland Circuit Court, Richard D. Kuhn, J., affirmed the probate court order. Mary Selle appeals by leave granted. *Held:*

The house and lot belonged to Max and Mary by the entireties since both purchased the vendee's interest. Therefore, when Max died, Mary acquired title as the survivor, not under the statutes of descent but by death of the other tenant and by operation of law. When the property was sold after Max's death Mary was entitled to keep the proceeds since it was her property. The probate and circuit courts assumed that a loss was suffered by the estate by payment of the loans with Max's personal accounts rather than the proceeds from the sale of the

REFERENCE FOR POINTS IN HEADNOTE
[1] 41 Am Jur 2d, Husband and Wife §§ 55, 72.

house. However, the loans were secured by savings accounts, not the real property, and the bank would have looked to those accounts for payment, having no rights in the property. Mary Selle's action did not cause a loss to the estate; therefore, the probate court erred in charging her with the amount of the loan payments.

Reversed and remanded.

HUSBAND AND WIFE — ESTATES BY THE ENTIRETY — SURVIVORSHIP — STATUTES OF DESCENT — OPERATION OF LAW.

A lot is held by both husband and wife by the entirety where the wife's name appears along with her husband's as a purchaser in a land contract under which the lot was purchased; if a house is constructed on the lot, it becomes part of the realty and both the house and the lot belong to the husband and wife as entireties property and where one dies, the title devolves to the survivor, not under the statutes of descent, but by death of the other tenant and by operation of law.

*Hampton, Snavely, Ranno, Lightbody & Girard,* for the estate of Max Selle.

*Sauer, Sterling & Stout,* for Hilda Garvin.

*John H. Waldeck,* for Mary V. Selle.

Before: M. J. KELLY, P.J., and BRONSON and D. C. RILEY, JJ.

PER CURIAM. Mary V. Selle was granted leave to appeal circuit court orders of June 7 and June 28, 1978, which affirmed orders of the Oakland County Probate Court. The probate court had found that Mrs. Selle acted improperly as special administratrix of her deceased husband's estate in repaying certain loans and charged her with the amount of the repayments. It also denied her petition for a widow's allowance on the ground that she waived her right to such an allowance in an antenuptial agreement. Mrs. Selle appealed to the circuit court, which affirmed the decision on the loan

repayment issue and dismissed the appeal on the widow's allowance issue, which was filed separately, on the ground that the filing was not timely under GCR 1963, 701.2. Mrs. Selle filed a motion for an order allowing a belated appeal, which was denied by the circuit court. Her application for leave to appeal the circuit court orders was granted by this Court on May 4, 1979.

Mary V. and Max Selle entered into an antenuptial agreement on June 23, 1965, immediately before their marriage, which provided, *inter alia,* that property owned by the parties prior to their marriage would remain separate property and property acquired jointly during the marriage would take on "all legal attributes of jointly owned property". The agreement also contained a provision under which Mrs. Selle waived her rights to dower and permanent alimony, and accepted the agreement "in lieu of all other statutory rights and benefits".

The parties jointly purchased the vendee's interest in a lot in December, 1969, and on March 3, 1973, Max Selle entered into an agreement which called for construction of a house on the lot. Mr. Selle financed construction of the house by obtaining bank loans and he arranged the financing so that the loans were secured by funds in his personal savings accounts with the bank, rather than by encumbrances on the real property. The apparent purpose of the development of the lot was profit from the investment rather than use of the house as a residence for the Selles, and shortly after completion of the house in September, 1973, the property was listed for sale. Max Selle died on May 1, 1974, and Mrs. Selle was appointed special administratrix of his estate on May 13, 1974. The decedent's will nominated two of his friends as co-executors of the estate and did not name Mrs.

Selle as a beneficiary, referring to the antenuptial agreement. On June 4, 1974, Mrs. Selle filed a petition for instructions requesting, *inter alia,* that the probate court issue an order permitting her, as special administratrix, to pay off the bank loans secured by the savings account funds to prevent the accrual of further interest charges. The petition made no mention of the use of the loan proceeds to finance construction of the house or that the property was then for sale. The petition was granted and Mrs. Selle paid off the loans with money from the decedent's personal savings accounts. The real property was sold by Mrs. Selle on July 3, 1974, for $47,000. She paid the builder his profit under the construction agreement and the closing expenses and retained the remaining proceeds.

Mrs. Selle filed a first and final account as special administratrix and listed the loan repayment as an expenditure. Legatee Hilda Garvin objected to the account and following a hearing on March 8, 1976, the probate court disallowed the loan repayment expenditure and directed Mrs. Selle to reimburse the estate the amount of the repayment, which was $30,152.91. In its opinion, the probate court held that Mrs. Selle acted improperly by repaying the loans out of the estate funds without first disclosing in her petition for instructions that the loans were used to finance construction of the house. The court concluded that she was guilty of self-dealing.

Mrs. Selle first contends that the circuit court erred in affirming the probate court's order that she reimburse the estate for the amount of the loan repayments, because the loans were a proper claim against the estate, which suffered no loss as a result of the repayment and she did not benefit

at the expense of the estate because she had no legal obligation to turn over proceeds from the sale of the real property to it.

Mrs. Selle's name appears along with her husband's as a purchaser in the land contract under which the lot was originally purchased. Therefore, the lot was held by both as tenants by the entirety. *Zeigen v Roiser,* 200 Mich 328; 166 NW 886 (1918). When the house was constructed on the lot, it became part of the realty and therefore the lot and house thereon belonged to decedent and his wife as entireties property. *Michigan Mutual Life Ins Co v Cronk,* 93 Mich 49; 52 NW 1035 (1892), *Rzeppa v Seymour,* 230 Mich 439; 203 NW 62 (1925). When property is held by tenants by the entirety, upon the death of one, the title devolves upon the survivor, not under the statutes of descent, but by death of the other tenant and by operation of law. Therefore, in the instant case, Mrs. Selle became the fee simple owner of the property upon her husband's death on May 1, 1974. *Farmers & Merchants National Bank & Trust Co v Globe Indemnity Co,* 264 Mich 395; 249 NW 882 (1933). When the property was sold on July 3, 1974, Mrs. Selle was entitled to keep the proceeds, since it was her property.

The probate court based its decision on two cases, *In re McKenna's Estate,* 334 Mich 368; 54 NW2d 611 (1952), and *In re Tolfree Estate,* 347 Mich 272; 79 NW2d 629 (1956), each of which involved self-dealing by a fiduciary resulting in financial losses to the estate for which the fiduciary was charged. Michigan statutes in effect during the time of the present case also indicate that fiduciaries are properly charged for losses caused to the estate they represent. MCL 704.35; MSA 27.3178(286), MCL 704.37; MSA 27.3178(288).

The probate and circuit courts assumed that a loss was suffered by the estate when Mrs. Selle paid the bank loans with the funds in the decedent's personal savings accounts rather than the proceeds from the sale of the house. However, the loans were secured by the savings accounts, not the real property, and the bank would have looked to those accounts for payment, having no rights in the property. Mrs. Selle's action did not cause a loss to the estate; therefore the probate court erred in charging her with the amount of the loan repayments.

We find that the other issues raised by Mrs. Selle lack merit.

Reversed and remanded.