# STATE OF MICHIGAN

# COURT OF APPEALS

GERALD SCOTT USIONDEK and ELIZABETH
USIONDEK,

Plaintiffs/Counterdefendants-
Appellees,

v

FRANK S. PETERS, ARDA A. PETERS, JAMES
T. NUNN, PEARL NUNN, JOHN FAZEKAS,
MARIA FAZEKAS and WILLIAM FASECAS,

Defendants,

and

BEATRICE FASECAS, KEVIN FASECAS and
SHANNON ION,

Defendants/Counterplaintiffs-
Appellants.

UNPUBLISHED
April 16, 2015

No.   319701
Monroe Circuit Court
LC No.   11-030341-CH

Before:  HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Beatrice Fasecas, Kevin Fasecas and Shannon Ion, appeal by right the trial court's judgment denying their motion for summary disposition and granting summary disposition and quieting title to real property in favor of Gerald Scott Usiondek and Elizabeth Usiondek.  They also challenge the trial court's prior orders granting a default judgment quieting title in favor of the Usiondeks to the real property at issue against Frank S. Peters, Arda M. Peters, James T. Nunn, Pearl Nunn, John Fazekas and Maria D. Fazekas, identified as earlier owners in the chain of title, and the trial court's denial of their motion to set aside the default.  We affirm.

This litigation arises from a dispute over ownership of real property referred to as "the River Flats" area. The property borders the Huron River and is contiguous to the property the Usiondeks owned.  Apparently, the River Flats area is submerged several months of the year by the waters of the Huron River.  When the waters recede, however, the area is exposed and accessible and is situated between the Usiondeks' property and the Huron River.  Put simply, the

-1-

Usiondeks claim that as riparian land owners that the River Flats area is part of their property, which they allege extends to the center of the Huron River. In contrast, Beatrice Fasecas, Kevin Fasecas and Shannon Ion claim that the area was reserved, having initially been part of a larger parcel of land and, despite the subsequent subdivision of the parcel, comprises a "no man's land" available "for everyone's enjoyment."

Beatrice, Kevin and Shannon assert the trial court erred in denying their motion to set aside the default against Frank S. Peters, Arda A. Peters, James T. Nunn, Pearl Nunn, John Fazekas, and Maria Fazekas. They argue the existence of procedural errors in the failure to serve their counsel with the pleadings and to properly identify the real parties in interest. They further contend that as possible heirs of John Fazekas they have an interest in the disputed property.

Issues of law, such as the interpretation of court rules, are subject to review de novo. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "We review for an abuse of discretion a trial court's decision on a motion to set aside a default and whether to grant a default judgment. A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Id.* (citations omitted).

Generally, it is the policy of this state to not set aside properly entered defaults and default judgments even though the law also favors the determination of claims on the merits. *Alken–Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). "A motion to set aside a default or a default judgment . . . shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." MCR 2.603(D)(1). The good cause requirement may be shown by demonstrating "a substantial defect or irregularity in the proceedings" or "a reasonable excuse for failure to comply with the requirements which created the default." *Alken–Ziegler*, 461 Mich at 230.

The Usiondeks acknowledge that through oversight counsel for Beatrice, Kevin and Shannon was not provided notice of the default. They emphasize, however, that the default does not encompass these parties and does not negatively affect their rights as their claims continued to be litigated to conclusion before the trial court. Although counsel for Beatrice, Kevin and Shannon was not counsel of record for the defaulted individuals, it is clear that the failure to serve them was contrary to the requirement of MCR 2.603(A)(2), which states, in relevant part: "Notice that the default has been entered must be sent to all parties who have appeared and to the defaulted party." Nevertheless, it is questionable whether Beatrice, Kevin and Shannon have standing to set aside the default against the other defendant. A party must have a legally protected interest that is in jeopardy of being adversely affected to have standing. *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013). In this instance, there has been no demonstration that the property rights Beatrice, Kevin and Shannon claimed have been adversely affected by the default of the other defendants, particularly as their claims were allowed to proceed in the trial court.

In addition, MCR 2.603(B)(1) provides:

a) A party requesting a default judgment *must give notice of the request to the defaulted party*, if

(*i*) the *party against whom the default judgment is sought has appeared* in the action;

(*ii*) the *request for entry of a default judgment seeks relief different in kind* from, or greater in amount than, that stated in the pleadings; or

(*iii*) the pleadings do not state a specific amount demanded. [Emphasis added.]

We interpret court rules by applying the same principles that govern statutory interpretation. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). The goal when interpreting a court rule is to give effect to the rule maker's intent as expressed in the plain and ordinary meaning of the words used in the rule. If the terms of the rule are not ambiguous, we need only enforce the rule as written. See *Peterson v Fertel*, 283 Mich App 232, 235-236; 770 NW2d 47 (2009). MCR 2.603(B)(1) requires notice only to parties that are in default, which, here, does not include Beatrice, Kevin and Shannon. The parties subject to the default in this matter never appeared in the action, nor did any counsel on their behalf. Moreover, the relief sought of quieting title is consistent with the relief requested in the Usiondeks' pleadings.

In accordance with MCR 2.603(D)(1), a motion to set aside a default or default judgment "shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." A trial court should consider the totality of the circumstances in determining whether the defaulting party has established good cause and a meritorious defense. *Shawl v Spence Bros, Inc*, 280 Mich App 213, 236-237; 760 NW2d 674 (2008). "Good cause" can be demonstrated by a reasonable excuse for a failure to comply with the requirements that created the default. *Id*. at 221 (quotation marks and citations omitted). Factors found to be relevant in determining whether a party has demonstrated good cause have encompassed: (1) whether there was a complete failure to respond or a mistake in determining the deadline for a response, (2) the circumstances underlying the failure to file or timely respond, and (3) whether the failure was knowing or intentional. *Id*. at 238. A meritorious defense is established by providing an affidavit of facts delineating the defense. MCR 2.603(D)(1). To constitute good cause to set aside a default, a procedural error must have actually prejudiced the party that was defaulted. *Alycekay Co v Hasko Constr Co, Inc*, 180 Mich App 502, 506-507; 448 NW2d 43 (1989); MCL 600.2315(11) (providing that a party must show prejudice to obtain relief from a default or default judgment). As noted, the parties seeking to set aside the default were not defaulted.

Beatrice, Kevin and Shannon also assert that their rights may have been impaired because they might have been able to claim through John Fazekas, a defaulted party. Notably, this claim was not raised, despite the length of time the litigation had been pending, until entry of the default. In addition, Beatrice, Kevin and Shannon did not come forward with any evidence to suggest or demonstrate that they would be able to establish a claim premised on their status as an heir of John Fazekas. A party must satisfy its evidentiary burden regarding a genuine issue of material fact with more than conjecture and speculation. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Specifically, a genuine issue of material fact exists only when the record evidence, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Further, based on the chain of title, when John Fazekas died, his interest passed to his wife, Ethel. "When property is held by tenants by the entirety, upon the death of one, the title devolves upon the survivor, not under the statutes of descent, but by death of the other tenant and by operation of law." *In re Selle Estate*, 96 Mich App 373, 377; 292 NW2d 147 (1980). So, after John died, Ethel became the fee simple owner of the property. Hence, Ethel was entitled to convey the property to Charles Hunt, and none of John Fazekas' other heirs had any reserved rights to the property. It is also worth noting that John Fazekas died in approximately 1996, and that this litigation was initiated in 2011. There is no indication that Beatrice, Kevin or Shannon sought to establish their rights to any estate of John Fazekas in 1996 following his death or at any time during this litigation until 2013 when challenging the entry of a default judgment against John and other defendants. In addition to being speculative, the assertion of Beatrice, Kevin and Shannon as possible heirs of John Fazekas is also precluded by their failure to assert such rights in a timely manner. See MCL 600.5801(4) (setting the default period of limitations for claims to possession of land at 15 years); and *Angeloff v Smith*, 254 Mich 99, 101, 235 NW 823 (1931) (opining that the doctrine of laches is founded upon long inaction to assert a right, coupled with change of conditions that renders it inequitable to enforce the right).

Beatrice, Kevin and Shannon also contend the trial court erred by ruling that the Usiondeks properly identified the real parties in interest in the caption of their pleadings. The Usiondeks named as defendants to the action the prior owners in the chain of title (such as the Nunns, Peters, etc.) and also "all known successors and assigns" of the specified individuals "who may claim an interest in certain real property situated in Berlin Township, Monroe County, Michigan, and any persons claiming a title interest through those parties." Beatrice, Kevin and Shannon argue that, instead, the Usiondeks were required to use the terms "all unknown heirs, devisees, and assignees of the deceased" to identify the real parties in interest.

MCR 2.201(B) requires an action be prosecuted in the name of the real party in interest. "A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Blue Cross & Blue Shield of Mich v Eaton Rapids Community Hosp*, 221 Mich App 301, 311; 561 NW2d 488 (1997). The procedure for identifying unknown parties is encompassed in MCR 2.201(D):

> (1) Persons who are or may be interested in the subject matter of an action, but whose names cannot be ascertained on diligent inquiry, may be made parties by being described as:
>
> > (a) unknown claimants;
> >
> > (b) unknown owners; or
> >
> > (c) unknown heirs, devisees, or assignees of a deceased person who may have been interested in the subject matter of the action.
>
> If it cannot be ascertained on diligent inquiry whether a person who is or may be interested in the subject matter of the action is alive or dead, what disposition the person may have made of his or her interest, or where the person resides if alive, the person and everyone claiming under him or her may be made parties by

naming the person and adding "or [his or her] unknown heirs, devisees, or assignees."

Although the Usiondeks did not technically comply with the wording of MCR 2.201(D)(1), any discrepancy is not dispositive. In support of their claim of error, appellants cite to an unpublished opinion of this Court that lacks any precedential value, nor do we find it persuasive. See MCR 7.215(C)(1). As noted by *Estate of Tice v Tice*, 288 Mich App 665, 669; 795 NW2d 604 (2010), pleadings may be amended to reflect the real parties in interest. Specifically, MCL 600.2301 grants broad authority to trial courts to amend pleadings and directs that any errors or defects in the proceedings which do not affect the substantial rights of the parties be disregarded.

Beatrice, Kevin and Shannon, who were served through counsel with the original pleadings, were on notice regarding any possible interest in the property and had the ability to participate in the litigation. It is telling, that none of these individuals asserted a right pertaining to any alleged error in identifying the real parties in interest at the initiation of the litigation or for the following two year period until entry of the default became an issue. Rather than requiring that the default be set aside, the trial court could have simply permitted the Usiondeks to amend their pleadings to reflect the language of MCR 2.201(D). Finally, Beatrice, Kevin and Shannon cannot demonstrate that the alleged error in identifying the real parties in interest was such that it affected their "substantial rights" given the progression of the litigation and their opportunity to contest the Usiondeks' request to quiet title.

Beatrice, Kevin and Shannon also impliedly assert that the trial court erred by including the disputed River Flats area in the default entered quieting title of the deceased predecessors in interest to the Usiondeks by using the survey description of the property rather than the legal description set forth in the Usiondeks' deed. As discussed previously, the individuals complaining of the default are not subject to it; consequently, they lack standing to challenge the default. Furthermore, they cannot demonstrate that they incurred any prejudice by the default as Beatrice, Kevin and Shannon were permitted to proceed to summary disposition in litigating rights of ownership to the disputed area of property. As discussed in *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006):

> An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case.

Beatrice, Kevin and Shannon cannot demonstrate an injury related to the trial court's use of an alternative property description in the default as they are not subject to the default, and the default did not impair or impede their ability to pursue the rights they claimed to the challenged area. Beatrice, Kevin and Shannon also challenge the trial court's ruling quieting title to the River Flats property to the Usiondeks, asserting the area is not included in the metes and bounds description of the property and was not conveyed in the chain of title. They also contend the trial court erred in ruling that the Usiondeks' septic and leach fields did not constitute a trespass on

Beatrice's property and that Beatrice did not have a prescriptive easement for the portion of her driveway that encroaches onto the Usiondeks' property.

A trial court's decision regarding a motion for summary disposition in a declaratory judgment action is reviewed by this Court de novo. *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002), mod 468 Mich 699 (2003). "An action to quiet title is an equitable action, and the findings of the trial court are reviewed for clear error while its holdings are reviewed de novo." *Fowler v Doan*, 261 Mich App 595, 598; 683 NW2d 682 (2004).

The Usiondeks' action to quiet title to the River Flats property is an appropriate means to resolve a dispute concerning who has superior rights or title to the property. See *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999); see also MCL 600.2932 and MCR 3.411.

It is undisputed that the original or parent parcel that contained both Beatrice's and the Usiondeks' property was a much larger parcel that in 1924 used the Huron River as a boundary and encompassed approximately 165 acres of land owned by the Peters. Ten years later, the Peters quit claimed part of this property, still referencing the Huron River as a boundary. A court order entered in 1939 recognized the Peters as the fee simple owners of the property. When Arda M. Peters conveyed her interest in the property to the Nunns in 1943, a metes and bounds description was used which, for the first time, did not reference the Huron River as a boundary. In 1961, the Nunns entered into a land contract with John and Maria Fazekas for this property. Concurrent with the execution of the land contract, the Nunns recorded an affidavit "for the use and benefit" of "the vendees" asserting to "continu[e] and preserv[e] all of the incidents and rights attached to said lands." The legal description in the affidavit was consistent with the 1943 deed from the Peters to the Nunns, but specifically indicated the parcel contained 12.406 acres of land and was "bounded on the east by the Huron River." The quit claim deed issued to John and Maria Fazekas provided commensurate with the land contract again referenced the Huron River as a boundary and further indicated an intent of "conveying all . . . title and/or riparian rights" for the 12.406 acre parcel. However, the deed issued at the fulfillment of the land contract described the property in accordance with the legal description contained in the Nunn affidavit, but it omitted language referencing that the property was "bounded on the east by the Huron River." After his wife, Maria, died, John Fazekas conveyed this parcel to himself and his new wife, Ethel Fazekas. The legal description of the property was the same as that contained in the warranty deed issued following completion of the land contract. In 1990, John and Ethel gave a warranty deed for the property to William and Beatrice. This property is now what Beatrice owned, is identified as 4749 S. Huron River Drive, and comprised the severance of the 12.406 parcel into two separate parcels. John and Ethel Fazekas continued to reside on the parcel, identified as 4777 S. Huron River Drive, and which later became the Usiondeks' property. The deed to Beatrice and William does not reference the River Flats area, nor does it contain any reservation of riparian rights to that section of property. Ethel, as the surviving spouse of John, subsequently conveyed her property to Charles F. Hunt in 1998. This deed used metes and bounds for the property description and does not reference the Huron River as a boundary. Hunt conveyed this same described property to the Waldrops in 1999, who conveyed it in 2009 to the Usiondeks.

Littoral or riparian rights are property rights that arise when land touches or includes a body of water. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 191; 521 NW2d 499 (1994). "The basis of the riparian doctrine, and an indispensable requisite to it, is actual contact of the land with the water." *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985). Riparian rights are recognized to include the following rights: (1) to use the water for general recreational purposes, (2) to "wharf out to navigability," (3) to access navigable waters, in addition to (4) the "right to accretions." *Hilt*, 252 Mich at 225. In other words, "the right to acquisitions to land, through accession or reliction, is itself one of the riparian rights." *Id.* at 218; see also *Peterman*, 446 Mich at 192. The terms accretion and reliction pertain to processes where land that abuts water is increased through the addition of material to the bottomland of the water (comprising accretion) or involving the permanent withdrawal of the water from the shoreline (comprising reliction or dereliction). See *Hilt*, 252 Mich at 219; *Glass v Goeckel*, 473 Mich 667, 693 n 23; 703 NW2d 58 (2005).

The Usiondeks contend that the River Flats area is part of their original parcel as reflected by language in the parent parcel indicating the Huron River as an eastern boundary to the property rather than as suggested by Beatrice accruing through accretion or reliction, which entails more detailed proofs. Clearly, the parent parcel indicated that the property, which included the parcel that the Usiondeks subsequently acquired, was initially identified as running to and bordering the Huron River. Later, when metes and bounds descriptions were used in conveying the land that contained this parcel, the language referencing the aquatic border was omitted. Importantly, for several months of the year the Usiondeks' property continues to border or is encroached upon by the Huron River. Many years ago, our Supreme Court indicated that "the settled law of this state" recognizes "that any use of lands under rivers, which is compatible with the full enjoyment of the public easement, belongs with the upland, to which it was originally appurtenant, unless sold or granted separately so as to sever it." *Richardson v Prentiss*, 48 Mich 88, 92; 11 NW 819 (1882) (citation omitted).

Also absent in the subsequent conveyances of property severed from the parent parcel that became Beatrice's parcel and the Usiondeks' parcel is any reservation of riparian rights. "It is a settled rule in this state that, where there is no reservation of them, riparian rights attach to lots bounded by natural watercourses." *Schweikart v Stivala*, 329 Mich 180, 191; 45 NW2d 26 (1950) (citation omitted). This rule was addressed in *Little*, 249 Mich App at 513-514:

> While Michigan law does not permit the severance and transfer of riparian ownership or riparian rights normally enjoyed exclusively by owners of riparian land, it clearly allows a grantor to confer to nonriparian backlot owners an easement to enjoy such rights. Further, our courts have made clear that such a grant is not to be assumed; rather, a court must determine the scope of the nonriparian owners' rights as a question of fact, by examining the language of the easement and [if the language of the easement is ambiguous] the surrounding circumstances at the time of the grant. Further, in determining these rights, the court must consider whether the use would unreasonably interfere with the riparian lot owners' use and enjoyment of their property. [*Id.*, as modified 468 Mich 699.]

No such easement is contained or referenced in the deeds to the subject parcels. Consequently, because the rights appurtenant to the property were not reserved or restricted in any way and because the property conveyed extended out to the Huron River, all riparian rights pertaining to property passed to the grantees. *Richardson*, 48 Mich at 93. In other words, although the use of metes and bounds to convey property may provide a method for a grantor to limit or restrict the land conveyed, if the conveyance lacks an express reservation of riparian rights, those rights pass with the land. As such, the trial court did not err in quieting title to the property to the Usiondeks.

Beatrice further asserts entitlement to a prescriptive easement for the River Flats property. "An easement by prescription arises from a use of the servient estate that is open, notorious, adverse, and continuous for a period of fifteen years." As discussed in *Killips v Mannisto*, 244 Mich App 256, 258-259; 624 NW2d 224 (2001). Further, the 15-year period may be achieved by "tacking" periods of possession by predecessors in interest. *Id*. at 259. "Mutual use of an area will not mature into a prescriptive easement until the mutuality has ended and the adverse and hostile use continues for the statutory period." *Williamson v Crawford*, 108 Mich App 460, 464; 310 NW2d 419 (1981). As noted already, until 1989 or 1990 when Beatrice's parcel was severed and conveyed to her and her husband, William, John and Ethel Fazekas owned the entire parcel. After this conveyance, Ethel Fazekas continued to reside on the parcel that has subsequently become the Usiondeks' property. The two parcels were acknowledged to have been owned by family members with permissive use and entry onto each other's lands. In 1998, Ethel conveyed her parcel to Charles Hunt. There is no factual dispute that Hunt purchased this as an investment property and never resided on the parcel. Moreover, there is no evidence or suggestion that, in his absence, the permissive use of the property to access the River Flats area was challenged or even known by Hunt. Evidence suggested that the Wardrops continued to permit at least some limited encroachments or entry upon the parcel by members of Beatrice's family. It is only in 2009, upon transfer of the property to the Usiondeks, that entry onto the property was contested and denied. Even without considering the continued permissive use of the property by Beatrice and her kin as allowed by Hunt and the Wardrops, we find there has been no demonstration of the requisite 15 year period, from 1998 to 2009, to support a prescriptive easement claim by Beatrice to the River Flats property.

Any claim by Beatrice of an easement by necessity is also unavailing. Before an easement of necessity will be implied, "the party who would assert the easement must establish that it is strictly necessary for the enjoyment of the property. Mere convenience, or even reasonable necessity, will not be sufficient if there are alternative routes, even if these alternatives prove more difficult or more expensive." *Schmidt v Eger*, 94 Mich App 728, 732; 289 NW2d 851 (1980). In this case, Beatrice also has access to the Huron River from her own property, albeit perhaps not as easily or as preferable as that available on the Usiondeks' parcel, obviating any assertion of necessity.

Beatrice further disputes the trial court's determination regarding her claim of trespass pertaining to the intrusion of the Usiondeks' septic and leach fields onto her property and the denial of an easement for the portion of her driveway encroaching on the neighbor's property through acquiescence, adverse possession or prescription. We note that a definitive factual determination regarding the location of the septic and leach field was not made in the trial court, but that the trial court's ruling implies that an encroachment does exist.

The Usiondeks' septic system was installed by John Fazekas before the parent parcel was divided, and Beatrice took her parcel with knowledge of its existence. There was no complaint regarding the location of the septic and leach field until the River Flats dispute began. The trial court implied that any encroachment of the Usiondeks' septic system or field onto Beatrice's property was necessary to permit the Usiondeks' continued use and enjoyment of their land. But the trial court further indicated that should the field fail or require repair in the future, its replacement must lie within the confines of the Usiondeks' property.

In effect, the trial court determined that any encroachment of the Usiondeks' septic or leach field onto Beatrice's property constituted an implied easement. As discussed in *Rannels v Marx*, 357 Mich 453, 456; 98 NW2d 583 (1959) (citation omitted):

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.

Further:

> This is an instance where previous use in possession of the common grantor was visible, apparent even to a casual observer, continuous, and necessary to convenient use of the property. Such a use prior to division of the property has been referred to as a quasi-easement. At time of sale of the property without reference to the quasi-easement, an easement is held to exist by implication because of the obvious intention of the parties. [*Id.* at 458 (citations omitted).]

The trial court's ruling on the septic system is, therefore, not in error.

Beatrice also asserts she is entitled to continued use of her driveway based on a prescriptive easement or acquiescence. Beatrice uses a portion of the Usiondeks' property purportedly for storage of vehicles and driving upon to avoid traversing the septic field that encroaches on her property. Beatrice asserts, and the Usiondeks acknowledge, that they were apprised of this usage when they purchased the property.

> An easement represents the right to use another's land for a specified purpose. An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. Mere permissive use of another's property, however, will not create a prescriptive easement. In order to establish their right to the relief sought, the burden rested on the [defendants] to show by satisfactory proof that the use of [plaintiffs'

-9-

property] . . . was of such character and continued for such length of time as to ripen into an easement by prescription. [*Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678-679; 619 NW2d 725 (2000) (citations, footnotes and quotation marks omitted).]

Beatrice failed to establish the requisite statutory period of "open, notorious, adverse, and continuous" use of the property. Family members owned the properties from approximately 1989 to 1998, and the evidence demonstrated that that use was permissive. When the parcel that now comprises the Usiondeks' property was transferred to a non-family member in 1998, Hunt did not object to the use as he was never present. When Hunt transferred his interest to the Wardrops, they specifically granted Beatrice's family the continued use of the property in the manner alleged. It was not until 2009 that Beatrice's using a portion of the property as part of her driveway was challenged and disputed. Even if the periods of ownership by Hunt and the Wardrops are not included or construed as permissive, insufficient time has passed to establish a prescriptive easement.

Beatrice further claims a right to continued use of the driveway based on the doctrine of acquiescence, which "provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line." *Killips*, 244 Mich App at 260. "Unlike a claim based on adverse possession, an assertion of acquiescence does not require that the possession be hostile or without permission. The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Id*. Beatrice's argument regarding acquiescence fails because neither the Usiondeks nor their predecessors in interest ever mistook or treated the use of the portion of their property as a driveway as a boundary line of the property. In *Kipka v Fountain*, 198 Mich App 435, 438-439; 499 NW2d 363 (1993) (emphasis added), the legal concept of acquiescence was explained as being "concerned with *a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is.*" Because there is no assertion or evidence to indicate that any of the property owners believed the portion of the driveway encroaching on the Usiondeks' parcel constituted a boundary line for the property, the doctrine of acquiescence is inapplicable.

Finally, Beatrice, Kevin and Shannon contend the trial court erred in denying an oral motion to amend their counterclaims to include adverse possession and an implied or necessary easement with regard to the River Flats area.

A trial court's denial of a motion to amend a complaint is reviewed for an abuse of discretion. *Tierney v Univ of Mich Regents*, 257 Mich App 681, 687; 669 NW2d 575 (2003). In addition, a trial court should freely grant leave to amend a pleading "when justice so requires." MCR 2.118(A)(2). "Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *Jenks v Brown*, 219 Mich App 415, 420; 557 NW2d 114 (1996).

Initially, it has been acknowledged that Kevin and Shannon have no ownership interest in the property, obviating any basis to amend the counterclaims to include nonexistent claims for individuals who lack standing. Because Kevin and Shannon lack standing, this Court will not

reverse the trial court when it reaches the correct result even if it were for a wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007).

Similarly, any claim of Beatrice is unavailing and futile. The trial court correctly determined that any adverse possession claim would lack merit based on the permissive nature of the use of the property and the absence of the requisite statutory period. In addition, the trial court determined that Beatrice, through her own property, had access to the Huron River obviating any claim of an easement based on necessity. Three things must be demonstrated to establish an implied easement: "(1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits." *Schmidt*, 94 Mich App at 731. "The party asserting the easement has the burden of proving the claim by a preponderance of the evidence." *Id.* Beatrice simply cannot demonstrate necessity as she had access to the Huron River through her own property. *Id*. at 732. Because any amendment would have been futile, the trial court correctly denied the oral request to amend.

We affirm. As the prevailing parties, appellees may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio