SCHWEIKART *v.* STIVALA.

1. Ejectment—Plaintiff's Burden of Proof—Title.
   A plaintiff in an action of ejectment has the burden of proving his title or right of possession to the land involved.

2. Same—Accretions—Title—Evidence.
   Plaintiffs *held*, to have failed to prove their title to any of the area involved in ejectment suit, claimed to be land formed by accretions to shore of a lake of which plaintiffs were littoral proprietors.

References for Points in Headnotes
[1] 18 Am Jur, Ejectment, § 104.
[2] 18 Am Jur, Ejectment, § 10.
[4, 8, 9] 56 Am Jur, Waters, § 52.
[4, 8, 9] Title to beds of natural lakes or ponds.  23 ALR 757; 112 ALR 1108.
[5] 30 Am Jur, Judgments, § 220.
[7] 56 Am Jur, Waters, § 485.
[9] 56 Am Jur, Waters, §§ 254, 287.

3. DESCENT AND DISTRIBUTION—SUCCESSION OF PROPERTY RIGHTS.

    Sole heirs of decedent became possessed of whatever property
rights he held at the time of his death.

4. DEEDS—WATERS AND WATERCOURSES—RIPARIAN RIGHTS—FEE TO
LAKE BOTTOM.

    Provisions of deeds in plaintiffs' chain of title whereby grantors
conveyed all the riparian or water rights pertaining to land
on shore of water connecting two of the Great Lakes conveyed
the fee to the shore but not to any of the area on the lake
side of the shore line.

5. JUDGMENT—RES JUDICATA—PARTIES.

    Decree in a former suit quieting title in plaintiffs as against
defendants and intervenors therein was of no binding force as
to defendant in instant ejectment suit where latter was not a
party to the earlier suit.

6. EJECTMENT—TITLE—ADVERSE POSSESSION—SHORE LANDS.

    Record in ejectment action failed to show that plaintiffs acquired
title to land claimed by adverse possession or that any portion
of the area ever became contiguous to lands owned by the
plaintiffs or any of those through whom plaintiffs derived title
to shore lands.

7. WATERS AND WATERCOURSES—ACCRETIONS—TITLE.

    Accretions must in fact be contiguous to the land of one assert-
ing title to the accretion.

8. NAVIGABLE WATERS—SHORE OWNER'S TITLE—TITLE OF STATE—
WATER LINE.

    The shore proprietor's fee stops at the water line of a body of
water connecting 2 of the Great Lakes and the title of the
State begins there irrespective of the depth of the water and
although it be grown up to aquatic plants and unfit for navi-
gation.

9. SAME—RIPARIAN RIGHTS—RESERVATION IN DEED.

    Riparian rights to shore land of water connecting 2 Great Lakes
passed to purchaser thereof, where there was no reservation
of such rights in either the land contract or deed nor mention
made of them.

10. EJECTMENT—FAILURE TO PROVE TITLE IN PLAINTIFF—DEFEND-
ANT'S TITLE.

    A decision in ejectment that plaintiff has failed to prove owner-
ship or right to possession of area on lake side of shore line
does not determine what rights defendant may have in such
area.

Appeal from Macomb; Spier (James E.), J. Submitted June 7, 1950. (Docket No. 19, Calendar No. 43,827.) Decided December 5, 1950.

Ejectment by Carrie Schweikart and others against Frank Stivala to try title to land. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Carl K. Rix* (*John T. Lungerhausen,* of counsel), for plaintiffs.

*Clifford A. John,* for defendant.

NORTH, J. This is a suit in ejectment to try title to certain property hereinafter designated. Defendant claims title to the parcel as an accretion to a lot owned by him. Plaintiffs dispute defendant's claim of ownership and assert title to the parcel in controversy on the following grounds:

"That the land in this area, including the land in question, was formed by accretions to the shore of the lake [St. Clair], of which the plaintiffs were the littoral proprietors at the date of defendant's land contract [1940]."

Plaintiffs also assert title under the terms of a decree rendered in a suit brought by plaintiffs to quiet title to an area including the parcel which is the subject matter of this ejectment case. The instant suit was heard by the court without a jury. From a judgment in defendant's favor, plaintiffs have appealed.

Plaintiffs, as heirs of Carl Schweikart, deceased, in 1926 inherited title to a parcel of land in Harrison township, Macomb county, Michigan. At least a portion thereof was platted in 1935, the plat being known as "Supervisor's Plat No 9" of Harrison township. In 1940, plaintiffs entered into a contract

to sell to defendant lot 57 of the plat; and in fulfillment of the contract plaintiffs in November, 1942, conveyed this lot 57 by warranty deed to defendant. The lot appears to be 60 feet in width and approximately 168 feet in length. In a southwesterly direction this lot faces on Conger Bay Drive, and in a northeasterly direction towards Conger bay, which is a part of Lake St. Clair. The plat in which lot 57 is included is formed somewhat like the letter L. It extends from lot 55 at the angle of the L in a northwesterly direction to and beyond Lake street, and from lot 55 the plat extends almost directly east. Defendant's lot 57 is the second lot northwesterly of lot 55. The area in controversy in this case, as described in plaintiffs' declaration, is of the same width as lot 57 and extends northeasterly therefrom approximately 466 feet to the open waters of Lake St. Clair. Prior to the time of defendant's purchase a channel known as "Schweikart's Channel" had been excavated. It extends from the next lot southeasterly of defendant's lot in a southeasterly direction to the water front of lot 55 and thence in an easterly direction. At some little distance east of lot 55 Schweikart's channel connects with or crosses another channel known as "Catfish Channel" which extends in a northerly direction and through which boats can reach the open waters of Lake St. Clair. The above noted portion of Catfish channel is an extension of the channel which runs northerly from Clinton river to Conger bay and the waters of Lake St. Clair. The Schweikart channel was first dredged sometime between 1924 and 1926. In addition to the portion of this channel, above noted, it also continues in an easterly direction from Catfish channel to Lake St. Clair near the mouth of Clinton river. Supervisor's Plat No 9 was so laid out in 1935 that a row of lots faced on Schweikart's channel as extended northwesterly in front of lots 56, 57 and 58.

From time to time Schweikart's channel has been widened and deepened by dredging, and the excavated soil deposited on adjacent area. A channel separating lots 56, 57 and 58 from the area northeasterly thereof, including the area in suit, had existed for some considerable time prior to defendant's purchase. About 1926, a Mr. Peltier, the owner of the lot next northwesterly of defendant's lot, "dug out and made the channel wider" to about 15 feet in front of lots 56, 57 and 58. At least from 1935 to 1941 this portion of the channel continued to be of the width of 15 or 16 feet. In 1941, further dredging was done by defendant, evidently to enable somewhat larger boats to reach and go through Schweikart's channel to Lake St. Clair.

It seems conceded that for many years flood waters of Clinton river were partially carried away through Catfish channel and that by reason of the alluvial deposits of these flood waters upon the area lying northeasterly of lots 56, 57 and 58, the land gradually built up. When the water level of the lake was high most (if not all) of such land was covered with water; during normal or low water this area was not all submerged, but was of a marshy, boggy character and much of it grown over with rather dense, heavy vegetation. For approximately 10 years prior to the time defendant purchased lot 57 (1940), the level of the lake was comparatively low, and during that period pheasant hunters and muskrat trappers went into the area in question; but otherwise no use of the land appears to have been made or attempted at that time.

In the spring of 1941, by dredging opposite the northeasterly line of his lot, defendant widened his channel to between 25 and 30 feet, with a depth of $4\frac{1}{2}$ feet. Much and possibly all of the earth removed was deposited on defendant's lot for the purpose of filling. In 1940, the year when defendant contracted

to purchase lot 57, he had a small garden plot on the opposite side of the channel from lot 57, being a portion of the land in suit.

The surveyor, Walter J. Lehner, who in 1935 prepared Supervisor's Plat No 9, testified in effect that with slight variation the plat line in the area here involved and his survey line or meander line are the same, and the line of the plat, which includes the northeasterly line of defendant's lot where it is along the water's boundary, is the shore line or water's edge, and that the row of lots 56 to 97 (which includes defendant's lot 57) went to the water and meander line. It so appears from the recorded plat. At the time defendant purchased lot 57 he did not examine the plat, nor did he make any examination of the area involved in this suit. We quote from his testimony:

"*Q.* You never went over to see whether there was land over here or not, did you?

"*A.* All I see water from the other side, from marsh.

"*Q.* You just stood over here (apparently on the platted land) and looked across here and what you saw was some marsh and saw water in some spots?

"*A.* Right there.

"*Q.* But you never were over there to see whether there was any land there?

"*A.* Never. After they put the dirt there the following year I went over. That was in 1941. * * * As a matter of fact I never did try to go over into this area on the easterly part of the land in front of my lot until I made soundings here about two weeks ago. * * * My house now stands about 55, 60 feet from the water. * * * When I built it was about 10 to 15 feet from the water. * * *

"*Q.* To get back to the original question, there always was water here as far as you know, in front of your lot?

"*A.* It was all over water.

"*Q.* In front of your lot there was water?

"*A.* Yes. * * * When I bought there was water out in front of lot 57.

"*Q.* Was there water as far out as you can see?

"*A.* Yes, that is all can see.

"*Q.* Was there any land between the edge of the water looking straight out east from your land?

"*A.* I never seen any.

"*Q.* You said when you bought you didn't see any canal, all you saw was water?

"*A.* Water.

"*Q.* Water, and since 1940 when you bought that property has there ever been a time when, except for this little garden plot, you couldn't look out toward the bay and see water and marsh?

"*A.* That is right.

"*Q.* Can you do that today?

"*A.* Yes."

The area to which the foregoing testimony of defendant refers is included in that to which plaintiffs herein claim to be the absolute owners, excepting plaintiffs' admission of defendant's right of "easement of a canal known as Schweikart's Water Highway (also known as Schweikart's Channel)." Prior to defendant's purchase of lot 57 from plaintiffs, they owned in fee all of the land (with certain exceptions not material herein) adjacent to that portion of Conger bay to the northeast and to the north of Supervisor's Plat No 9. In the instant case plaintiffs claim they are now the fee owners of a substantial area, mostly, if not wholly, resulting from alluvial deposits flooded in from Clinton river, which claimed area is within that designated in Supervisor's Plat No 9 and in earlier government surveys as Conger bay.

As a first requisite of plaintiffs' right to recover in this ejectment suit they must prove their title or right of possession to the land involved. As noted earlier herein plaintiffs assert that (1) they have

such title by reason of conveyances to them and their predecessors in title; (2) by reason of the alleged fact that as littoral owners they have become possessed of title to the area resulting in accretions contiguous to their land; and (3) they also assert title by adverse possession. The burden of proof is on plaintiffs. From our review of the record we have been unable to find that plaintiffs have proven title to any of the area involved in this ejectment suit.

In January, 1909, by warranty deed given by the heirs of one William Cottrell, there was conveyed to Carl Schweikart and 2 others a parcel of land which included that portion of Supervisor's Plat No 9 later laid out as defendant's lot 57, and other neighboring lots. The land in the Cottrell deed was bounded on the west for a distance of 221 feet as follows:

"To the S W corner of land of the Conger Bay Club, so called, thence E'ly along the S'ly side of land of Conger Bay Club, so called, *about 100 feet to Lake St. Clair;* thence S'ly parallel with said road heretofore referred to, to the lands of Denmarsh; thence W'ly along Denmarsh N'ly line to the place of beginning. * * * The parties of the first part hereby convey all the riparian or water rights pertaining to said land (with a certain exception not here material)."

In 1921, through mesne conveyances Carl Schweikart, as grantee in a quitclaim deed, became the sole owner of the Cottrell property described in the deed just above noted, except that the last quoted sentence was not included in the quitclaim deed to Carl Schweikart. Evidently in lieu thereof the quitclaim deed to Carl Schweikart contained the following:

"It is the intention to convey and the said party of the first part (Mount Clemens Carp Co., Ltd.)

does hereby convey all its right, title and interest in and to the land described together with all the interests, rights and easements granted to and acquired by a certain deed from Carl Schweikart and others to first parties dated January 22d, 1917, * * * also all the right, title and interest of every kind and nature in and to all the land and real estate and every interest in the land now owned by party of the first part, wherever said land may be situated."

Plaintiffs' allegation that they are "the owners in fee" of the area in suit is denied by defendant's answer. Plaintiffs, as sole heirs of Carl Schweikart, deceased, became possessed of whatever property rights were held by Carl Schweikart at the time of his death. But we are of the opinion that by the foregoing line of conveyances plaintiffs, as heirs of Carl Schweikart, became possessed of title in fee only to the shore line of Conger bay (Lake St. Clair), together with such riparian rights as were appurtenant thereto. Title in fee was not conveyed to any of the area on the lake side of the shore line.

In addition to the foregoing, plaintiffs in asserting fee title also rely upon the decree obtained by them in August, 1928, in a suit which they brought to quiet title to the area to which they now assert ownership. In this particular it should be noted that defendant Stivala herein was not a party to that litigation. It preceded defendant's purchase of lot 57. Further, by its very terms the decree constituted an adjudication of plaintiffs' right only as against each of the somewhat numerous defendants there named. We quote from the decree entered in that suit:

"And it appearing * * * that the title of the said plaintiffs herein had at the time of their filing of said bill of complaint ought to be quieted *as to and against the said claim or possible rights on the part of said defendants* * * * and that the plaintiffs

and their predecessors in title to the said lands and premises in said bill of complaint described, have been for more than 15 years in open, actual, visible, distinct, notorious, continuous, hostile and adverse possession of said real estate and of all of it *adversely to said defendants and intervening defendants,* * * * and that plaintiffs' title thereto has by reason of such possession become complete and perfect, *against the said defendants and intervening defendants, and each of them.* * * *

"It is therefore ordered, adjudged and decreed, that the claims and possible rights *of the said defendants and intervening defendants* * * * be and the same are hereby declared to be null and void as against the plaintiffs and that the title of said plaintiffs in and to the lands in question herein at the time of the filing of said bill of complaint was free and clear of and from *all claims, rights or encumbrances of any kind whatsoever on the part of said defendants or any of them.*"

It is also worthy of note that the lands and premises covered by the decree were bounded by a line, which, so far as material herein, extended from a certain point "easterly * * * to Lake St. Clair; thence southerly and southeasterly along the border of Lake St. Clair to the westerly line of Catfish Channel (so called); * * * together with all parts of private claim 373 lying between said above described premises and Conger bay of Lake St. Clair and any marsh appurtenant and adjacent thereto and all riparian rights appurtenant to said above described premises [including the property rights described in a contract given by William Cottrell and subsequently conveyed by the Cottrell deed above noted]."

Plaintiffs' suit to quiet title also sought and obtained correction of certain pertinent deeds, but here again by the corrected conveyances it is disclosed that the fee title of plaintiffs went only to "the border of Lake St. Clair." Admittedly plaintiffs became

the owners of land which extended to the shore line of Conger bay "and all riparian rights appurtenant" to such land. However there is no showing in this record that by reason of plaintiffs' title to upland property they, as riparian owners through accretions, obtained a good title to the area involved in this ejectment suit, which in a northeasterly direction extends from defendant's lot 57 to the open waters of Lake St. Clair. As to defendant herein, who was not a party to plaintiffs' suit to quiet title, the decree of the court, which pertained only to those who were defendants or intervening defendants in that case, is of no persuasive or binding force. It does not in any effectual way tend to establish plaintiffs' allegation that they are the owners in fee of the area in suit. The record in the instant case does not show that plaintiffs have title by adverse possession to the area involved in the suit at bar; or that any portion of that area ever became contiguous to lands owned by plaintiffs or any of those through whom plaintiffs derived title to shore lands. As to its being necessary that any accretions must in fact be contiguous to the land of one asserting title to the accretion, see 56 Am Jur, p 898.

"The depth of water upon submerged land is not important in determining the ownership. * * * The adjoining proprietor's fee stops there (at the water line), and there that of the State begins, whether the water be deep or shallow, and although it be grown up to aquatic plants, and although it be unfit for navigation." *People* v. *Warner,* 116 Mich 228, 239. See, also, *Hilt* v. *Weber,* 252 Mich 198, 208 (71 ALR 1238).

As appears from the foregoing, after plaintiffs had acquired the land which now includes defendant's lot 57 and appurtenant riparian rights, they sold to defendant on contract lot 57 and 2 years later

gave a warranty deed thereof to defendant; but in neither instrument did plaintiffs make any reservation of riparian rights appurtenant to lot 57, and consequently such rights passed with the fee to the lot to defendant.

"It is a settled rule in this State that, where there is no reservation of them, riparian rights attach to lots bounded by natural watercourses." *Bauman* v. *Barendregt,* 251 Mich 67. See, also, *Blain* v. *Craigie,* 294 Mich 545.

Notwithstanding in the deed by plaintiffs to defendant the property conveyed was described as lot 57, nonetheless such conveyance (there being no reservation) carried with it appurtenant riparian rights the same as though the property, which had a water frontage, had been described in the deed by metes and bounds.

Our decision herein does not hinge upon nor determine what rights defendant may have in the area 60 feet in width extending from the northeasterly line of his water-front lot out to the open waters of Lake St. Clair. Instead, we find that plaintiffs have not proven ownership or right of possession of the area in suit, and our decision is based thereon.

The trial judge found and recited in the judgment entered "that the said defendant is not guilty of unlawfully withholding from the said plaintiffs the premises described, in manner and form as the plaintiffs have in their declaration in this cause alleged." The judgment entered in the circuit court is affirmed, with costs to appellee.

Boyles, C. J., and Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred. Reid, J., did not sit.