LITTLE v KIN

Docket No. 220894. Submitted July 11, 2001, at Detroit. Decided February 1, 2002, at 9:05 A.M. Leave to appeal sought.

Robert and Barbara Little brought an action in the Oakland Circuit Court against Steven and Rosalyn Kin and Thomas and Darlene Trivan, seeking both an injunction preventing the defendants from maintaining a boat dock on the plaintiff's lakefront property and a declaration regarding the defendants' rights under an easement. The defendants counterclaimed for interference with the use and enjoyment of their easement rights. The parties' lots resulted from the subdivision of a lakefront parcel. The plaintiffs' lot has one hundred feet of lake frontage. The lots owned by the Kins and the Trivans are stacked behind the plaintiffs' lot and have no lake frontage. However, the Kins and the Trivans hold an easement to sixty-six feet of the shoreline and thirty feet from that section of shoreline into the plaintiffs' lot for access to and use of the riparian rights to the lake. On cross-motions for summary disposition, the court, Alice L. Gilbert, J., granted summary disposition for the plaintiffs on their action, ruling as a matter of law that the easement granted to the defendants is limited to lake access rights and cannot include the right to build or maintain a dock. Regarding the defendants' counterclaim, the court granted in part and denied in the part the parties' motions for summary disposition, ruling that the plaintiffs may not interfere with or obstruct the defendants' right of access to the lake, but are not required to remove landscaping and timbers that the defendants claimed interfered with the use and enjoyment of their easement rights. The defendants appealed.

The Court of Appeals held:

While full riparian rights and ownership may not be severed from riparian land and transferred to nonriparian owners, the original owner of riparian land that is to be subdivided into lots that include some without water frontage may grant an easement to backlot owners for their enjoyment of riparian rights. A court is not to assume such a grant, but must determine the scope of the nonriparian owners' rights as a question of fact by examining the language of the easement and the surrounding circumstances at the time of the grant. The court must also consider whether the use

would interfere with the riparian owners' use and enjoyment of their property.

In this case, the trial court erred in concluding, as a matter of law, that the easement granted to the defendants cannot include the right to build or maintain a dock, that the defendants' rights in the thirty-foot by sixty-six-foot easement are limited to access only, and that the plaintiffs may perform landscaping regardless of whether it narrows the easement or otherwise interferes with the defendants' use and enjoyment of the easement.

Reversed and remanded for reconsideration.

WATERS AND WATERCOURSES — RIPARIAN RIGHTS — EASEMENTS.

The original owner of riparian land that is to be subdivided into lots that include some without water frontage may grant an easement to owners of nonriparian lots for their enjoyment of rights normally enjoyed exclusively by owners of riparian land; a court is not to assume such a grant, but must determine the scope of the nonriparian owners' rights as a question of fact by examining the language of the easement and the surrounding circumstances at the time of the grant; the court must also consider whether the use would interfere with the riparian owner's use and enjoyment of the riparian property.

*Butzel Long, P.C.* (by *Ronald E. Reynolds*), for the plaintiffs.

*Cox, Hodgman & Giarmarco, P.C.* (by *Michael R. Turco*), for the defendants.

Before: WHITE, P.J., and SAWYER and SAAD, JJ.

SAAD, J. Defendants appeal as of right from the trial court's orders granting summary disposition to plaintiffs. We reverse and remand.

### I. NATURE OF THE CASE

In addition to the surrounding Great Lakes, the state of Michigan boasts thousands of inland lakes[1] that provide considerable enjoyment and recreation

---

[1] According to the Michigan Department of Natural Resources, the state of Michigan has more than 11,000 inland lakes.

to its citizens. Unfortunately, much litigation also arises from property disputes relating to the rights and interests of those owning land on and around these lakes. Here, the dispute involves a disagreement between a riparian[2] property owner and neighboring nonriparian "backlot" owners regarding the scope of their right to enjoy Pine Lake. Despite the original owner's grant of an easement and full "riparian rights" to the defendant backlot owners, plaintiffs claim that, because their property abuts the lake, they have superior rights to use and enjoy the water. In contrast, defendants argue that plaintiffs bought their lakefront lot with full knowledge that the original owner intended to grant all lot purchasers substantial rights to use the lake and easement, which includes the right to build and maintain a boat dock.

After reviewing applicable case law from our Supreme Court and our Court of Appeals, we hold that, while full riparian rights and ownership may not be severed from riparian land and transferred to non-riparian backlot owners, Michigan law clearly allows the original owner of riparian property to grant an

---

[2] As explained in 78 Am Jur 2d, Waters, § 30:

"Riparian" is from the Latin word "riparius," of or belonging to the bank of a river, in turn derived from "ripa," a bank, and is defined as "pertaining to or situated on the bank of a river," the word referring to the bank, and not to the bed of the stream. Briefly, therefore, a "riparian owner" is one whose land is bounded by a river and "riparian rights" are special rights to make use of water in a waterway adjoining the owner's property. Riparian rights are not limited to private owners.

Our Supreme Court observed in *Thies v Howland*, 424 Mich 282, 288, n 2; 380 NW2d 463 (1985), that, "[s]trictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." However, as in *Thies*, "the term 'riparian' is often used to describe both types of land and will be so used in this opinion." *Id.* at 288, n 2.

easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian. Because the trial court erred in interpreting Michigan case law and erred in resolving the scope of defendants' rights under the easement as a matter of law rather then as a question of fact, we reverse and remand for further proceedings consistent with this opinion.

## II. FACTS AND PROCEDURAL HISTORY

After a 1974 fire gutted C.A. Muer Corporation's Charley's Crab restaurant on Pine Lake in West Bloomfield, the corporation subdivided the property into two three-lot columns, consisting of two lots with approximately one hundred feet of lakefront each, designated as lots A and B, and two lots stacked behind each lakefront lot (lots C and E behind lot A, and lots D and F behind lot B), for a total of six lots. To maximize the market value for each of the six lots, the corporation resolved to guarantee all lot purchasers substantial access to and use of Pine Lake. To that end, the corporation divided each of the one-hundred-foot shoreline lots into three equal sections and specified that the "frontlot" owners have the exclusive use of thirty-three feet of shoreline and, in a duly recorded easement, provided that the backlot owners hold a non-exclusive, permanent easement over the remaining sixty-six by thirty feet of shoreline "for access to and *use of the riparian rights to Pine Lake.*" This case involves a dispute between the owners of lot B and the owners of lots D and F.

Plaintiffs Robert and Barbara Little bought frontlot B for $40,000 in 1977. Documents in the record reveal

that plaintiffs purchased their lot with notice of the easement, which appeared in their title commitment, in the plat survey, and in the recorded easement.[3] Defendants Thomas and Darlene Trivan bought their home on backlot F in the late 1980s for $550,000, and defendants Steven and Rosalyn Kin bought a home on backlot D in 1995 for $475,000. Before defendants' purchase of these lots, the Findlays, who formerly owned backlot D, approached plaintiffs about building a dock on the sixty-six-foot easement. Though information in the record differs regarding the intended size of the dock, evidence indicates that the Findlays built the dock in 1988 and used it for launching their boat, sunbathing, and picnicking. Defendants maintain that they continued to use the boat dock after they bought their backlots.

On May 13, 1998, plaintiffs filed this action to prevent defendants from maintaining a boat dock on Pine Lake. Specifically, plaintiffs sought an injunction for removal of the dock and to prevent the building of future docks, and a declaration of defendants' rights under the easement. Thereafter, defendants filed a countercomplaint alleging that plaintiffs intentionally placed thorny bushes and landscape timbers on the easement, which interfered with their use and enjoyment of their easement rights. The parties filed motions for summary disposition on both claims and, following oral argument, the trial court granted summary disposition to plaintiffs. In a written opinion, the trial court reasoned that defendants, as owners of backlots, are not riparian owners and that, as a mat-

---

[3] According to a July 1982 West Bloomfield Zoning Board of Appeals hearing on an unrelated matter, plaintiff Robert Little acknowledged that the sixty-six-foot easement was reserved for the use of all six lot owners.

ter of law, an easement permits only a right of access to and use of the lake and cannot confer the right to construct a boat dock. Regarding the countercomplaint, the trial court issued a second written opinion and stated that it granted in part and denied in part the parties' motions. The order states that plaintiffs may not interfere with or obstruct defendants' right of access to the lake, but does not require plaintiffs to remove their plantings or other landscaping.

### III. LEGAL ANALYSIS

#### A. STANDARDS OF REVIEW

The extent of a party's rights under an easement is a question of fact for the trial court, which we review for clear error. *Dobie v Morrison*, 227 Mich App 536, 541-542; 575 NW2d 817 (1998). However, we review de novo a trial court's decision regarding a motion for summary disposition in a declaratory judgment action. *Michigan Educational Employees Mut Ins Co v Turow*, 242 Mich App 112, 114; 617 NW2d 725 (2000); *Dobie, supra* at 538. We also review de novo a trial court's rulings on equitable issues, including the grant of injunctive relief. *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999); *Dobie, supra* at 541-542.

#### B. APPLICABLE SUPREME COURT CASES

Plaintiffs argue, and the trial court agreed, that, as a matter of law, nonriparian lot owners may not maintain a dock on another's riparian land.

The courts of our state have long recognized that "[t]he basis of the riparian doctrine, and an indispen-

sable requisite to it, is actual contact of the land with the water." *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930); see also *Richardson v Prentiss*, 48 Mich 88; 11 NW 819 (1882). Indeed, " '[r]iparian land' is defined as a parcel of land which includes therein a part of or is bounded by a natural water course." *Thompson v Enz*, 379 Mich 667, 677; 154 NW2d 473 (1967) (opinion of KAVANAGH, J.). Further, "[a] 'riparian proprietor' is a person who is in possession of riparian lands or who owns an estate therein." *Id.* Here, the parties agree that defendant backlot owners are not "riparian owners" because they do not own land adjacent to Pine Lake. However, defendants contend that the original property owner, C.A. Muer Corporation, granted backlot owners full riparian rights through an easement, which includes the right to build and maintain a boat dock.

Our Supreme Court has established that persons who own riparian land "enjoy certain exclusive rights," including the right to erect and maintain docks. *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985). In contrast, nonriparian lot owners who hold an easement for lake access have the limited "right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming." *Id.* Plaintiffs argue that these principles compel our conclusion that a riparian landowner may not transfer riparian rights, including the right to maintain a dock, to a nonriparian landowner and that any attempt to do so is invalid.

The extent to which traditionally recognized riparian rights may be claimed, reserved, or transferred has been addressed by our courts in numerous published opinions. Before 1967, our Supreme Court held

in several cases that, by operation of law, riparian rights attach to lots bounded by natural water courses unless the deed contains a reservation or declaration that riparian rights do not pass under it. *Bauman v Barendregt*, 251 Mich 67, 69-70; 231 NW 70 (1930); see *Schweikart v Stivala*, 329 Mich 180, 191; 45 NW2d 26 (1950); *Blain v Craigie*, 294 Mich 545, 548; 293 NW 745 (1940); *Holda v Glick*, 312 Mich 394, 403; 20 NW2d 248 (1945). These holdings suggest that the owner of land abutting a body of water may reserve to himself the riparian rights normally attaching thereto by simply selling the land with an appropriate restriction. Indeed, in some cases, the Court went further and asserted that a riparian landowner may convey riparian rights separate from the fee. *Pleasant Lake Hills Corp v Eppinger*, 235 Mich 174, 178-179; 209 NW 152 (1926); *St Helen Shooting Club v Mogle*, 234 Mich 60; 207 NW 915 (1926).

Notwithstanding these prior declarations, our Supreme Court in *Thompson v Enz* clarified that a deed reservation or restriction does not constitute a grant of riparian rights, but merely a right of way to access the beach and waters. *Thompson, supra* at 685, relying on *Schofield v Dingman*, 261 Mich 611, 613; 247 NW 67 (1933) (a grant of "riparian rights" in a deed "can be given no greater meaning than right of access to the beach and enjoyment thereof for the purposes of recreation").

In *Thompson*, the defendant bought a parcel of land abutting Gun Lake and planned to build a subdivision with man-made canals so that all lot owners could access the lake. *Thompson, supra* at 674-675. Plaintiffs, owners of riparian land on Gun Lake, argued that defendant could not confer riparian rights

to nonriparian lot owners by building an artificial canal. *Id.* at 677. In deciding the issue, the Supreme Court ruled that "[l]and abutting on an artificial water course has no riparian rights." *Id.* at 679. Further, as noted above, the Court ruled that those Michigan cases purporting to allow a reservation of riparian rights only allowed the transfer of an easement for access to a water course. *Id.* at 682, 685. In thus concluding, the Court articulated the proposition on which plaintiffs heavily rely, that "riparian rights are not alienable, severable, divisible, or assignable apart from the land which includes therein, or is bounded, by a natural water course." *Id.* at 686.

Despite this seemingly definitive articulation that riparian rights are not transferable, the *Thompson* Court specifically recognized that a riparian owner may grant nonriparian owners the right to access and enjoy a lake by easement or license. *Id.* at 686.[4] The Court ruled that the proposed canals should be examined as easements for access to the lake and remanded the case for a determination of what rights the backlot owners would have through the easements. *Id.* at 686, 689.

Several years later, our Supreme Court again considered the scope of rights conferred by an easement on property abutting Gun Lake in *Thies v Howland.* In *Thies,* the plat designated driveways, walks, and alleys for the "joint use of all the owners of the plat" to provide them with lake access. *Id.* at 286. The ripa-

---

[4] Contrary to plaintiffs' assertion on appeal, our Supreme Court in *Thompson* did not hold that "any attempted transfer of the right made by a riparian to a nonriparian proprietor is invalid." See *Thompson v Enz, supra* at 682 (opinion of KAVANAGH, J.). Rather, the Court merely quoted this proposition from a Connecticut case in summarizing decisions from other states. *Id.*

rian lot owners brought suit to enjoin the nonriparian lot owners from building and maintaining a dock at the end of one of the easements. *Id.* at 287. The trial court granted the injunction and this Court affirmed. *Id.* On appeal, our Supreme Court considered the specific issue whether the plat dedication conveyed riparian rights to defendant landowners. *Id.*

In deciding the issue, and consistent with well-established riparian principles, the Court ruled that, because the defendants' lots did not abut the lake, "their land is not riparian." *Id.* at 288. However, regarding the scope of the nonriparian lot owners' rights, the Supreme Court opined:

> *Even if we conclude that defendants merely have an easement interest in the walk and alleys, they may still prevail.* Plaintiffs cannot prevent defendants from erecting a dock or permanently anchoring their boats if these activities are within the scope of the plat's dedication, *McCardel v Smolen*, 404 Mich 89, 97, 103; 273 NW2d 3 (1978), and do not unreasonably interfere with plaintiffs' use and enjoyment of their property. The ownership of the walk and alleys and the scope of the dedication of these lands are interrelated, but distinct inquiries. [*Thies, supra* at 289 (emphasis added).]

Thus, while recognizing that riparian ownership rights may not be transferred apart from riparian land, the Supreme Court established the critical principle that rights normally afforded exclusively to riparian landowners may be conferred by easement. Further, the Court established the controlling inquiry here: The *scope* of a nonriparian lot owners' rights under an easement on riparian land must be examined in light of the intent of the plattors and "[t]he intent of the

plattors must be determined from the language they used and the surrounding circumstances." *Id.* at 293.[5]

C. APPLICABLE COURT OF APPEALS CASES

Following the Supreme Court's decision in *Thompson*, our Court decided *Cabal v Kent Co Rd Comm*, 72 Mich App 532; 250 NW2d 121 (1976), in which deeds to nonriparian lots granted a "general easement" across a strip of land across the street from their lots for access to Crooked Lake. *Id.* at 533. The plaintiffs brought suit to quiet title to the strip after the defendants began using "their" part of the easement to build docks, store boats, and park cars. *Id.* at 534. On the basis of the language in the deeds, our Court ruled that "the right of defendants to maintain docks is reasonably appurtenant to their easement to enjoy boating in the lake." *Id.* at 536. The Court emphasized, however, that such uses are permitted as long as they do not "overburden the servient tenement . . . ." *Id.* at 536.

Our Court recently addressed similar issues in *Dobie v Morrison, supra,* which involved the dedication of a riparian lot as a park for use by lot owners with no lake frontage. *Id.* at 537. In deciding the scope of the nonriparian lot owners' rights, this Court reiterated the rule in *Thies* that "[t]he intent of the plattors should be determined with reference to the language used in connection with the facts and circumstances existing at the time of the grant." *Id.* at

---

[5] The *Thies* Court ultimately concluded that "[t]he term 'joint use' standing alone does not evidence an intent to grant a right to construct docks" and that "use of the easement was narrowly defined to include only limited vehicular traffic, the hand carrying or dragging of small boats to and from the lake, and walking." *Id.* at 294, 296.

540. Further, the Court established that "[t]he extent of a party's right under an easement is a question of fact." *Id.* at 541. On the basis of these principles, this Court ruled that, although the backlot owners did not have fee ownership in the park and only held easement rights in it, maintaining a dock was within the scope of the dedication in the plat and did not "unreasonably interfere with the plaintiffs' use and enjoyment of their property." *Id.* at 540-542.[6]

### IV. APPLICATION OF THE LAW

The well-established principles articulated by our Supreme Court and this Court control our decision here. While Michigan law does not permit the severance and transfer of riparian ownership or riparian rights normally enjoyed exclusively by owners of riparian land, it clearly allows a grantor to confer to nonriparian backlot owners an easement to enjoy such rights. Further, our courts have made clear that such a grant is not to be assumed; rather, a court must determine the scope of the nonriparian owners' rights as a question of fact, by examining the language of the easement and the surrounding circumstances at the time of the grant. Further, in determining these rights, the court must consider whether the use

---

[6] Though not binding precedent, we note that several panels of this Court have reiterated and applied these principles in unpublished opinions. *Evans v Gabriel,* unpublished opinion per curiam of the Court of Appeals, issued December 28, 1999 (Docket No. 212759); *Gross v Mills,* unpublished opinion per curiam of the Court of Appeals, issued September 28, 1999 (Docket No. 211776); *Woolley v Baier,* unpublished opinion per curiam of the Court of Appeals, issued June 18, 1999 (Docket No. 210262); *Hoisington v Parkes,* unpublished opinion per curiam of the Court of Appeals, issued March 12, 1999 (Docket No. 204515).

would unreasonably interfere with the riparian lot owners' use and enjoyment of their property.

Here, the trial court erred in concluding, as a matter of law, that the easement granted to defendant backlot owners cannot include the right to build or maintain a dock. Further, the trial court erred in ruling, as a matter of law, that defendants' rights in the thirty-foot by sixty-six-foot easement are limited to access only and that plaintiffs may perform landscaping regardless of whether it narrows the easement or otherwise interferes with defendants' use and enjoyment of the easement. Accordingly, we reverse the trial court's grant of summary disposition to plaintiffs and remand for reconsideration in light of this opinion.

On remand, in deciding the scope of defendants' rights under the easement, the trial court must consider the language in the easement itself and the circumstances existing at the time of the grant to determine if defendants' rights include building and maintaining a dock and the extent of defendants' rights to use the entirety of the easement. If the court finds that the easement permits defendants to build and maintain a dock, the trial court should examine whether this would unreasonably interfere with plaintiffs' use and enjoyment of their property. Further, if the court finds that the language of the easement and surrounding circumstances establish that defendants have full use of the entire easement area for purposes in addition to lake access, the trial court should consider whether such use would unreasonably interfere with plaintiffs' rights. Because these are questions of fact, the trial court must consider the documents, affidavits, transcripts, and other admissible evidence sub-

mitted by the parties in their motions for summary disposition.

Implicit in the decisions from our state courts is the important principle that, where possible, courts should honor the intent and established relationships of the parties by refraining from rewriting their original easement agreements, on which many residents of our state have relied for years without complaint or controversy. Furthermore, giving effect to the clear expression of the grantor in drafting easements for the benefit of lot purchasers appropriately honors the expectations of the parties.[7] This is particularly evident in this case, in which defendants paid significant premiums for lots based, in part, on easements purporting to grant a large lakefront area with broad accompanying usage rights.

By giving effect to the easements as written and to the intention of the original grantors, as required by *Thompson, Thies,* and *Dobie,* our ruling honors the reasonable expectations of lot purchasers. Moreover,

---

[7] In a case addressing similar issues, the Wisconsin Supreme Court stated:

Public policy supports the rule that riparian rights can be conveyed by easement. A deed, like any instrument, should not be rewritten by the court. If the court could rewrite or invalidate private contractual agreements, it would destroy the certainty upon which contracting parties are entitled to rely.

There are many non-riparian landowners in Wisconsin with lake access easements similar to the one in the present case. A rule of law validating lake access easements protects the clear expectations of non-riparian landowners who have relied on these easements for many years. The rule that riparian rights can be conveyed by easement carries out the obvious intent of the parties who entered into lake access easements. [*Stoesser v Shore Drive Partnership,* 172 Wis 2d 660, 670; 494 NW2d 204 (1993).]

While we do not by this citation adopt Wisconsin law in this area, the *Stoesser* Court fairly expressed these fundamental notions.

to hold otherwise would call into question the scope of rights currently enjoyed by lakefront easement holders throughout this state.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.