*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEVILS LAKE VENTURES, LLC,

Plaintiff-Appellee/Cross-Appellant,

v

DEVILS LAKE HIGHWAY ACREAGE, LLC, and
A. J. BROWN,

Defendants-Appellants/Cross-
Appellees,

and

DELBERT THORBEN and STACEY THORBEN,

Defendants/Cross-Appellees.

UNPUBLISHED
February 4, 2021

No. 349166
Lenawee Circuit Court
LC No. 16-005666-CH

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Plaintiff filed this action to quiet title to bottomland property under water in Devils Lake in Lenawee County. The bottomland property abuts plaintiff's lakefront, upland property. Defendants Devils Lake Highway, LLC, and A. J. Brown (collectively referred to as "defendants") acquired any rights that defendants Delbert Thorben and Stacey Thorben had to this bottomland property. Following a bench trial, the trial court quieted title in favor of plaintiff, ruling that plaintiff acquired littoral rights to the bottomland property as a result of its purchase of the upland property along the shoreline. Defendants now appeal by leave granted.[1] Plaintiff has filed a cross-appeal, challenging the trial court's exclusion of evidence and refusal to consider plaintiff's alternative claim for relief under a theory of acquiescence. We affirm.

---

[1] *Devils Lake Ventures LLC v Devils Lake Highway Acreage*, unpublished order of the Court of Appeals, issued July 31, 2019 (Docket No. 349166).

The underlying facts are not in dispute. In 2014, plaintiff purchased five acres of land that abuts Devils Lake in Lenawee County. Plaintiff purchased the property from U.S. Acquisition Property XXV, LLC, following the bankruptcy of Fred Semelka, who had operated a marina on the property for approximately 40 years. At issue in this case is the bottomland property that abuts plaintiff's shoreline, but is submerged under Devils Lake. Plaintiff brought this action to quiet title to the disputed bottomland property, contending that it acquired riparian or littoral rights to the bottomland property as part of its purchase of the upland property in 2014.

Defendants argued that plaintiff's chain of title did not include the disputed bottomland property because plaintiff's chain of conveyances only conveyed the property up to "along the water," and plaintiff did not acquire any littoral rights to the disputed bottomland property. Defendants argued that defendants Delbert Thorben and Stacey Thorben previously owned the bottomland property pursuant to a federal land patent dating back to the nineteenth century, before Michigan achieved statehood, and that the language of the deeds for the abutting Semelka property did not convey any interest in the disputed bottomland portion.

The Thorbens became involved in this dispute because defendants entered into an agreement with them in 2015 to acquire any rights they had to the bottomland portion that abutted plaintiff's property, on which Semelka had previously operated a marina. The Thorbens did not know if they had any interest in the bottomland property, but they agreed to convey any interest they had to defendants.

In 2015, the Thorbens and defendants were involved in separate litigation after the Thorbens decided not to proceed with the closing of the sale of their interest in the disputed bottomland property. Plaintiff unsuccessfully tried to intervene in that case. The Thorbens were ultimately ordered to convey any interest they had in the bottomland portion to defendants in accordance with their agreement. However, because plaintiff was not allowed to intervene in that case, that litigation did not resolve any claim of interest that plaintiff had to the disputed bottomland property. Plaintiff filed this action against defendants to quiet title to that property.

Following a bench trial, the trial court issued a written opinion in which it agreed that plaintiff met its burden of establishing superior title to the disputed bottomland property. The court agreed that plaintiff's purchase of the upland property included littoral rights to the abutting bottomland property. However, the court denied plaintiff's request for relief on its alternative claim for adverse possession and it refused to consider plaintiff's additional theory of acquiescence because that theory had not been properly pleaded.

## I. RIPARIAN OR LITTORAL RIGHTS

In their only issue on appeal, defendants argue that the trial court erred by applying state law regarding riparian or littoral rights to quiet title to the disputed bottomland property in favor of plaintiff because the bottomland property originally derived from a federal land grant patent. We disagree.

An action to quiet title is equitable in nature. This Court reviews equitable actions de novo, but any factual findings made by the trial court are reviewed for clear error. *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002). A court acting in equity

"looks at the whole situation and grants or withholds relief as good conscience dictates." *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). In this case, however, the parties' dispute primarily involves whether the trial court correctly applied the law. Questions of law are reviewed de novo. *In re Capuzzi Estate,* 470 Mich 399, 402; 684 NW2d 677 (2004).

The trial court accepted defendants' argument that the Thorbens retained a small portion of land that originated from a federal land patent, and that defendants acquired any interest held by the Thorbens. It is undisputed, however, that plaintiff acquired the upland property that abuts the submerged bottomland property in dispute. Defendants argue that because the submerged portion originated from a federal land grant patent, before Michigan became a state, the trial court erred by applying state law involving riparian or littoral rights to conclude that plaintiff had a superior interest in the bottomland property that abuts its upland property. Instead, defendants argue that title to the submerged bottomland portion of the land is controlled by the original federal land grant patent.

The trial court held that plaintiff had riparian or littoral rights to the bottomland portion, stating:

> Plaintiff next argues that as upland owner, it has riparian rights to the disputed subaqueous property. "A 'riparian owner' is one whose land is bounded by a river and 'riparian rights' are special rights to make use of water in a waterway adjoining the owner's property." *Little v Kin*, 249 Mich App 502, 504; 644 NW2d 375 (2002), *aff'd*, 468 Mich 699; 664 NW2d 749 (2003). Conversely, a "littoral owner" is a property owner whose land abuts a lake. *Dyball v Lennox*, 260 Mich App 698, 706; 680 NW2d 522 (2004). However, case law often uses the term "riparian" generally to describe both riverfront and lakefront property. *Id*.

> "It is the general rule, with some exceptions, that the title of the riparian owner follows the shoreline under what has been graphically called a moveable freehold." *Klais v Danowski*, 373 Mich 262, 275-76; 129 NW2d 414 (1964). Defendants counter Plaintiff's claim by arguing that riparian rights do not apply to subaqueous property subject to a federal patent, as are the bottomlands here, and rely on *Klais* to support that position.

> However, *Klais* does not stand for the principle that owners of patented lands have no riparian rights. Instead, *Klais* deals with the issues of (1) whether the Great Lakes Submerged Lands Act applied to patented lands, and (2) who has title to property created or lost when the water line changes. In answering the first question, *Klais* held that the Great Lakes Submerged Lands Act did not apply to patented lands. *Id*. at 277. The implications of this holding are that the State of Michigan had no public interest in patented bottomlands, that the State could not convey patented bottomlands, and that the State had no interest in controlling the alteration of patented bottomlands.

> With respect to the second issue, *Klais* held that "*by reason of riparian rights* and the consequent right to accretions," the property owners "gain by what

-3-

comes through accretions or reliction but do not lose by erosion or evulsion that which they own under the patent." *Id*. at 279 (emphasis added). In making that ruling, rather than determine that riparian rights do not apply to patented lands, the *Klais* court reasoned that as the patent descriptions extend to the border of a lake, "manifestly it was intended that *riparian rights should be and they were included*," and "it follows that what the patents covered then was upland lying landward of the border of the lake." *Id*. at 274-279 (emphasis added).

Additionally, riparian rights may not be severed from riparian land, though the riparian landowner may grant an easement to non-riparian owners. *Dyball*, 260 Mich App at 706. *See also Civic Ass'n of Hammond Lake Estates v Hammond Lake Estates No 3 Lots 126-135*, 271 Mich App 130, 133; 721 NW2d 801 (2006) (holding that riparian ownership rights may not be transferred apart from riparian land); *Little*, 249 Mich App at 513. "The titles to the beds are in the riparian owners." *Wantz*, 336 Mich at 116. "A deed or lease describing the boundary of a parcel of land as running along the shore of a particular lake or watercourse conveys or demises to the center of the lake or the thread of the watercourse. *Bauman v Barendregt*, 251 Mich 67, 231 NW 70 (1930); *Goff v Cougle*, 118 Mich 307, 76 NW 489 (1898). In such circumstances, Michigan law presumes that the grantor or lessor meant to transfer or lease riparian rights as well as upland." 1 Cameron, Michigan Real Property Law (3d ed), § 3.3, p 88.

Plaintiff, as holder of the riparian land—or more accurately, littoral land—is also holder of the riparian rights. Though Plaintiff's deed—and the deeds held by Plaintiff's two most recent predecessors in title—does not contain language granting interest south of the high water mark, Plaintiff nevertheless holds title to the bottomlands in front of its upland property by operation of law. Plaintiff has therefore established a prima facie claim of quiet title, and Defendant's claim to the disputed bottomlands must be evaluated in comparison.

The trial court then compared plaintiff's and defendants' competing claims to the disputed bottomland property. It found that "[p]laintiff, as littoral owner and holder of littoral rights to the bottomlands which abut its upland property, has title to said bottomlands by operation of law." The court found that defendants' claim to the disputed bottomlands property was premised on the judgment in the prior action against the Thorbens, in which the court awarded defendants title to the disputed bottomlands as against the Thorbens. The trial court concluded that plaintiff had the superior claim to the property because it recorded its deed in 2014, almost a year before defendants entered into their purchase agreement to acquire any interest the Thorbens had in the bottomland property, and before defendants acquired any recordable interest in the property based on the prior judgment. The court also reasoned that defendants were not bona fide, good-faith purchasers of the property because the Thorbens told defendants that they did not know if they had any interest in the bottomland property. However, the court also stated: "Further, riparian rights cannot be severed from the riparian lands, and as Plaintiff owns the littoral property, Plaintiff maintains possession of the littoral rights to the bottomlands south of the littoral property, subject to standard division of bottomlands of all littoral owners."

In denying defendants' motion for reconsideration, the trial court rejected defendants' argument that it was improper to rely on the law governing riparian or littoral rights to determine title to the disputed bottomland property because that property was not submerged when the initial federal land grant patent was issued. The trial court stated:

> In general summary, Defendants allege that the Court committed palpable error through misinterpretation of *Klais v Danowski*, 373 Mich 262; 129 NW2d 414 (1964) in the Court's determination that riparian rights apply to the bottomlands at issue, and through its reliance on that interpretation to award quiet title to Plaintiff. Defendants base this allegation on the post-trial discovery that the bottomlands at issue were, at the time of the initial federal patent, not submerged.

> In Defendants' view, the Court's interpretation of *Klais* as holding that owners of previously patented lands "gain by what comes through accretions or relictions but do not lose by erosion or evlusion [sic, avulsion] that which they own under patent" should result in the ultimate conclusion that the bottomlands of at least the disputed portion of Devil's Lake are not subject to ordinary riparian rights. This is, Defendants argue, because "*Klais* explicitly states that the federal government had the power to patent and convey territorial land, submerged or unsubmerged, and that the conveyances survived the creation of the State of Michigan, vesting title to any patented upland or bottomland to the individual and any subsequent heir and grantees, etc."

> Absent further guidance from superior courts at this juncture, this Court is not persuaded that its initial opinion, including its interpretation of *Klais* and application to the case at bar, is incorrect. It is the opinion of the Court that the portion of *Klais* in controversy is intended to address instances where the description of a patented segment of land reaches the water's edge, and the water level changes over time. *See Klais*, 373 Mich at 278-279. In those circumstances, "property owners tracing title back to a United States patent may reclaim the full extent of the description therein, which they continued to own all the while, when again above water, whether the emergence of the land be due to natural forces or artificial means." *Id*. This is a discrete issue, and particularly given the new evidence submitted by Defendants that the subject property was not submerged at the time of the patent (and did not contain any language in the patent connecting the property to a water's edge, as none existed at the time), it does not require the Court to alter its prior ruling. The Court declines to extend the holding of *Klais*.

> As such, Defendants have failed to demonstrate a palpable error by which the Court and the parties have been misled, and failed to show that a different disposition of the motion must result from correction of the error, pursuant to MCR 2.119(F).

On appeal, defendants argue that because the disputed bottomland property was originally conveyed by a federal land grant patent and the property was not submerged when the patent was issued, the trial court should not have resorted to state law regarding riparian and littoral rights. We disagree.

-5-

First, the trial court did not err by applying riparian or littoral rules to the bottomland property, which undisputedly was submerged and abutted plaintiff's upland property at the time the trial court quieted title. Contrary to what defendants argue, the decision in *Klais*, 373 Mich 262, does not compel a different result. That case involved rights to the bottomland of a Great Lake, which the state holds in public trust. The issue in *Klais* involved whether federally patented land passed to the state upon Michigan's admission to the Union. The Court held that the Great Lakes Submerged Lands Act[2] applied only to unpatented land, *id.* at 277, and therefore, a patentee's right to the land, whether above or beneath the water, was not affected by the creation of the state of Michigan. *Id.* at 274-275. Thus, the Court concluded that the original patentee did not lose title to what was granted by the federal government due to changes to the character of the property, such as rising lake levels or erosion, and therefore, the state of Michigan had no claim to patented lands as they became submerged, as a matter of statutory law. *Id*. at 278-279. This case is distinguishable because it does not involve any claim that submerged land is held in public trust and is subject to the Great Lakes Submerged Lands Act.

Defendants also rely on *Palmer v Dodd*, 64 Mich 474, 474-475; 31 NW 209 (1887), which involved a trespass by the defendant onto the plaintiff's land. Both parties acquired their lands through federal patents. While the Court in *Palmer* stated that "[t]he principles which govern the rights of riparian proprietors do not apply to defendant's grant," that was because "[n]o part of the land granted to him in the description contained in his patent was bounded by a lake or other water." The case does not stand for the proposition that state law regarding riparian rights cannot otherwise be applied to submerged land derived from a federal land patent that abuts lakefront property.

As explained in 1 Cameron, Michigan Real Property Law (3d ed), § 3.2, p 87, in the context of discussing the ownership of bottomland property, state law will apply if the original grant from the federal government does not provide otherwise:

> Unless there are reservations or exceptions in the pertinent grant from the federal government, the laws of the state determine the extent and nature of the ownership of riparian proprietors. As stated in *Packer v Bird*, 137 US 661, 669 (1891), "whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the States" in which the streams are situated. *See Grand Rapids Ice & Coal Co v South Grand Rapids Ice & Coal Co*, 102 Mich 227, 232, 60 NW 681 (1894) ("soil under the water of the inland lakes" in Michigan does not belong to general government or to State). In other words, if the title of a person claiming under a federal patent, which by its terms bounds the land on the margin of a body of water, extends beyond the edge of the lake or watercourse, the extension is by virtue of state law. [Footnote omitted.]

See also *Gregory v LaFaive*, 172 Mich App 354, 361; 431 NW2d 511 (1988).

---

[2] "The Great Lakes Submerged Lands Act, formerly MCL 322.701 *et seq.*, is now part of Michigan's Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*" *Glass v Goeckel*, 473 Mich 667, 673 n 3; 703 NW2d 58 (2005).

In sum, defendants' request that this Court allow the bottomland abutting plaintiff's property to be severed and treated as a separate parcel does not find support in existing law. Contrary to what defendants argue, the fact that the disputed bottomland property was originally part of a federal patent did not foreclose the trial court from applying this state's law of riparian and littoral rights to determine the present dispute involving submerged property on an inland lake. Accordingly, we affirm the trial court's order quieting title to the disputed property in favor of plaintiff

## II. PLAINTIFF'S CROSS-APPEAL

Because we have affirmed the trial court's decision quieting title to the disputed bottomland property in favor of plaintiff, it is unnecessary to decide plaintiff's issues on cross-appeal.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel